## CHRISTIAN F. KENNEWEG *vs.* THE COUNTY COM-MISSIONERS OF ALLEGANY COUNTY.

*Constitutional Law—Authority of Legislature to Regulate Primary Elections of Political Parties—Property Qualification—Requirement of Fee From Candidates—Public Policy—Equal Protection of the Law—Jurisdiction of Equity—Levy of Tax for Expense of Primary Election.*

The General Assembly possesses all legislative power and authority except in such instances and to such extent as the Constitutions of the State and of the United States have imposed limitations and restrictions thereon.

The General Assembly has the power to enact a law regulating the manner of holding primary elections to select candidates for office by one or more political parties, since there is no provision in the Constitution depriving it of that authority.

The Act of 1904, ch 508, provides that the primary elections in Allegany County by the two leading political parties to select candidates to be voted for at ensuing State and Congressional elections, shall be held in a certain manner and imposed duties relating thereto on the Board of Election Supervisors. One section of the Act directs that each candidate for nomination shall pay to the chairman of his party a fee to be used for defraying expenses of holding the primary. *Held,* that the exaction of such fee is not the imposition of a property qualification upon candidates for public office.

*Held*, further, that the Act is not invalid as against public policy or as contrary to fundamental principles of justice, since public policy, not founded in some Constitutional provision, cannot circumscribe the legislative authority, and nothing in the Act affects the life, liberty or property of the citizen.

The said Act directs that all candidates for election nominated by the two parties having the highest number of votes cast at the last general election shall be nominated by the direct vote of the members of said party, and the party casting the highest number of votes at the last general election shall hold its primary election on the first Saturday of September, and the party casting the next highest number of votes shall hold its primary election of the first day of registration prescribed by law. *Held*, that neither because the Act fixes different days for the primaries of the two parties, nor because it applies only to two political parties and does not include others nor because under a dishonest administration of the law the nomination of the minority party may be postponed until a day or two before the election does the Act conflict with the Fourteenth Amendment of the Constitution of the United States relating to the equal protection of the law.

The Act requires the Election Supervisors to provide, for the primary elections, the voting booths, ballots and other things which involve the expenditure of money. Under Code, Art. 33, secs. 2 and 5, the County Commissioners of a county are required to pay the expenses incurred by Supervisors in the performance of duties imposed on them by law. Consequently the County Commissioners are required to make a levy to pay the indebtedness contracted by the Supervisors in discharging the duties prescribed by the Act of 1904.

A Court of equity has no jurisdiction of a bill by a taxpayer to restrain the levy of a tax on the ground of the unconstitutionality of the law under which it is made, when it appears that the amount of the tax imposed upon the plaintiff is only about 66 cents, since Code, Art. 16, sec. 102, provides that the Courts of equity in this State shall not hear or give relief in any cause or matter wherein the debt or damage does not amount to twenty dollars.

After a levy has been made for the expense of holding a primary election and most of the tax has been collected, and the election has been held, it is too late, by a bill to restrain the collection of a tax, to ask a Court of equity to strike down everything which has been done under the apparent authority of the law authorizing the levy.

Appeal from the Circuit Court for Allegany County (BOYD, C. J., and HENDERSON, J.)

The cause was argued before MCSHERRY, C. J., BRISCOE, PAGE, PEARCE, SCHMUCKER and JONES, JJ.

*Irvine R. Dickie* and *W. C. Devecmon*, for the appellant.

*Benjamin A. Richmond* and *Albert A. Doub*, for the appellee.

McSHERRY, C. J., delivered the opinion of the Court.

The bill of complaint which inaugurated this proceeding was filed by the appellant against the appellees on the equity side of the Circuit Court for Allegany County on the twenty-eighth day of April, 1905. It was demurred to, the demurrer was sustained, the bill was dismissed, and from that decretal order the pending appeal was taken. The appellant is a taxpayer in and a resident of Allegany County and pays taxes on property owned by him and assessed to the value of six thousand dollars. He complains that the appellees—the County Commissioners—have levied upon the taxable property in said county the sum of two thousand dollars, to be included in the general levy of said county for the year 1905–1906 for the purpose of defraying the expenses of holding primary elections during the month of September, 1905, for the nomination of State and County officers to be voted for at the general election to be held in November following: That the levy of the above-named sum was made under a pretended authority supposed to be contained in *Chapter 508* of the Acts of the General Assembly of 1904. That the Act just indicated does not authorize the County Commissioners to make the levy in question; and that the Act is null, void and unconstitutional. The bill prays that an injunction may be issued restraining the County Commissioners "from levying or causing to be collected from the taxpayers of the county the said sum of two thousand dollars, or any part thereof for the illegal purposes aforesaid."

The appellant does not sue in behalf of himself and other taxpayers who may be similarly situated, and who may come in and make themselves parties to the cause, but he sues alone in his own name and his own behalf. Laying aside for the moment, the question as to whether he has shown on the

face of the bill, such a pecuniary interest as is required to give
a Court of equity jurisdiction in the premises, we turn to the
main and important inquiry involving the constitutionality of
the statute.    And in doing so we pass by, for the present, the
subsidiary objection as to the lack of authority on the part of
the commissioners to make the levy, because a few references
later on to the provisions of the Act and of the Code of Public
General Laws will refute this objection completely.

Had the General Assembly the power to adopt the *Act of
1904, ch. 508?*   In a word is the Act in conflict with any pro-
vision of the State or the Federal Constitution?   The Act is
an Act amendatory of the Public Local Laws of Allegany
County, and relates exclusively to the holding of primary elec-
tions in that county by the two leading political parties for the
selection of candidates to be voted for at ensuing State and
Congressional elections.    It places safeguards around and
gives legal sanction to these primary contests.   It prescribes
how nominations are to be made by popular vote; how and
upon what conditions candidates may enter those contests, and
in what manner and at what times the votes cast thereat shall
be counted, and how the results shall be ascertained and cer-
tified.    Elaborate details—not always consistent or harmo-
nious, perhaps—are prescribed with reference to the conduct
of the primaries; and the duties imposed upon the county
committees of the two political parties as well as the duties
assigned to the election supervisors are set forth with much
prolixity, though not always with very great clearness.    To
state more at large the numerous provisions of the statute
would necessitate a transcription of all its terms.    Enough has
been said to indicate the character, the scope and the object,
but not the minute provisions of this legislation; and we now re-
peat the question, Had the General Assembly the power to
adopt it?

The General Assembly possesses all legislative power and
authority except in such instances, and to such extent as the
Constitutions of the State and of the United States have im-
posed limitations and restrains thereon.    In this respect the

Legislature differs from the Congress of the United States which has, and can exercise, only such power as the Federal Constitution expressly or by necessary implication confers upon it.   In the General Assembly plenary power to legislate is vested, unless restrained by the Constitution.   In the Congress the power to legislate is not vested, unless confided by the Federal Constitution.   In the State Constitution we look, not for the power of the General Assembly to adopt an enactment, but for a prohibition against its adoption.   In the Federal Constitution we look, not for the prohibition, but for the delegated power to enact a measure.   The General Assembly being, then, the depository of all legislative power, except when restrained by the organic law, it follows that it is clothed with full power to enact a primary election law, if there is no provision in the Constitution depriving it of that authority. There is no such provision to be found in the Constitution of the State.   It is true that *sec. 42 of Art. 3* of the Constitution provides: "The General Assembly shall pass laws for the preservation of the purity of elections;" but the power to enact a primary election law lies back of and beyond this provision and is not derived from it at all.   The power to legislate in regard to elections—primary or general—if unrestrained by the Constitution itself is inherent in the General Assembly, and the provision just cited instead of *conferring* the power is a mandate to *execute* a power implicitly assumed to exist independently of the mandate.   "The General Assembly *shall* pass laws," is a direction to bring into activity an antecedent and independent authority.

The power, then, to enact a primary election law being inherent in the Legislature it only remains to inquire whether in the execution of that power the General Assembly has, by the Act in question, infringed upon or broken through some inhibitory provision of the organic law.   No section or clause of the Act has been pointed out as in conflict with any particular or designated prohibition ; and a careful reading of the statute has not disclosed to us the existence of such an antagonism.   Whilst this is true it has been contended that the Act

is void because it undertakes to add a property qualification for holding public office which is not contained in the Constitution ; and this contention is based upon *sec. 112 of the Act.* By the section just named, it is provided that each person who desires to become a candidate for nomination shall pay to the chairman of the committee of the party to which he belongs a certain fee, the amount of which is regulated for the different offices by the section in question ; which fees are to be used exclusively as a fund to defray the expenses of announcing candidates, printing ballots, furnishing blanks, and other necessary expenses for holding and conducting the primary election, and for paying such expenses of the return judges as may be determined by the convention of return judges. Now, the exaction of the fee is, by no means, the imposition of a property qualification on the candidates. Primary contests necessarily require the expenditure of money for the purposes just indicated ; and the money must be procured from some source. The requirement that the individuals, who, through the primaries, seek to secure nomination shall pay the expenses which the governing body of their party are compelled to incur for their benefit and in their behalf, is neither unreasonable nor unjust and most certainly is not the superaddition of a property qualification for holding the offices to which they aspire.

The appellant insists that the Act is against public policy and contrary to the fundamental priciples of justice ; but if this contention were conceded—and it is not—the ground of assault would be shifted to an entirely different position from the one of its alleged unconstitutionality. What public policy is invaded by it ? No exact definition of public policy has ever been given, or can be found. In *Richardson* v. *Mellish*, 2 Bing. 229, MR. JUSTICE BURROUGHS pointedly observed: "I for one protest against arguing too strongly upon public policy ; it is a very unruly horse, and when once you get astride it you never know where it will carry you. It may lead you from the sound law. It is never argued at all but when all other points fail." We do not deem it necessary to

go into a consideration of the several particulars in respect of which it is asserted public policy is violated by the Act; because, first, we are at a loss to know *what* public policy is invaded; and secondly because, public policy of itself and without having its foundation in some constitutional provision can neither circumscribe nor restrain the legislative authority of the General Assembly. We cannot undertake to declare the statute unconstitutional merely because it is assumed to be at variance with some undefined and indeterminate public policy, which at best is but a shifting and variable notion appealed to only when no other argument is available, and which, if relied on today, may be utterly repudiated tomorrow.

The great case of the *Regents of the University of Maryland* v. *Williams*, 9 G. & J. 365, is relied on to support the contention that the *Act of 1904, ch. 508*, is contrary to the fundamental principles of right and justice and is, therefore, void; but the case is not applicable. The question there involved and discussed and actually decided was whether the *Act of 1825, ch. 190*, was void because it impaired the obligation of the contract created by the prior *Act of 1812, ch. 159*, which incorporated the Regents of the University of Maryland. The conclusion reached by this Court is thus stated in the elaborate judgment delivered by the late CHIEF JUDGE BUCHANAN : "This brief view of the character and legal effect of the Act incorporating the Regents of the University, results in the opinion, that it is a contract protected by the Constitution of the United States, the obligation of which cannot be impaired by any Act of the Legislature of the State, without the assent of the corporation; and leads to the conclusion, consequent upon that opinion, that the *Act of 1825, ch. 190*, is repugnant to that instrument, and therefore void." After pointing out the particulars wherein the repugnancy consisted, the Court proceeded to say: "But the objection to the validity of the Act of 1825 does not rest alone for support upon the construction of the Constitution of the United States. Independent of that instrument, and of any express restriction in the Constitution in the State, there is a fundamental principle of right and justice,

inherent in the nature and spirit of the social compact (in this country at least), the character and genius of our goverment, the causes from which they spring, and the purposes for which they were established, that rises above and restrains and sets bounds to the power of legislation, which the Legislature cannot pass without exceeding its rightful authority.   It is that principle which protects the life, liberty and property of the citizen from violation, in the unjust exercise of legislative power."   Though this same doctrine has been alluded to in later cases (*Baugher* v. *Nelson*, 9 Gill, 307; *Harrison* v. *State*, 22 Md. 494 ; *Mayor, &c., Hagerstown* v. *Sehner*, 37 Md. 191 ; *Cahen* v. *Jarrett*, 42 Md. 575; *Trustees, &c.,* v. *Manning,* 72 Md. 122), it is to be noted that it was not necessary to the decision of the *Regents case,* which turned upon the "contract" clause of the Federal Constitution ; and that no statute, as far as we are aware, has ever been stricken down by this Court solely and exclusively because it exceeded the bounds set to legislative power by that fundamental principle of right and justice to which CHIEF JUSTICE BUCHANAN referred. It was held in *Mayor, &c., of Baltimore* v. *Board of Police, &c.,* 15 Md. 469, that this principle, with the limitation "that it was designed to protect the life, liberty and property of the citizen from violation in the unjust exercise of legislative power * * asserts a very correct doctrine."   There is no occasion to affirm or deny the principle, so far as this case is concerned, because nothing in the *Act of 1904, ch. 508,* affects in the most remote way, the life, liberty or property of the citizen.

This brings us to the objection that the statute is void because in conflict with the Fourteenth Amendment of the Federal Constitution, in this, that it denies to one political party the equal protection of the law.   The particulars in which it is alleged this denial of equal protection, or this unlawful discrimination, exists, will now be considered.   By *sec. 105* of the Act it is provided that "All candidates for election to office nominated by the two parties having the highest number of votes cast for the highest State office at the last general election * * * shall be nominated by the direct vote of the

members of said party   *   *   *   and the party casting the highest number of votes for the highest State officer at the last general election shall hold its primary election on the first Saturday of September, and the party casting the next highest number of votes shall hold its primary election on the first day of registration prescribed by law." It is because the Act fixes a *different* day for each of the two leading parties to hold its primaries; and because the Act applies *only* to the *two* parties which cast at the previous election the highest number of votes, and does not include other political parties, that it is supposed to be in conflict with the Fourteenth Amendment. In neither of these respects is there intrinsically any denial of the equal protection of the law. State legislation is not obnoxious to this provision, if all persons subject to it are treated alike under similar circumstances and conditions in respect both to the privileges conferred and the liabilities imposed. *Mo. Pa. R. Co. v. Mackey*, 127 U. S. 209; *Munn v. Illinois*, 94 U. S. 113. There is no such thing as an inherent right in any political party to insist that all political parties shall hold their primaries on one and the same day; and there can, therefore, be no denial of an equal protection of the law in the mere fact that different days have been prescribed by the statute for the respective primaries. But it is contended that the denial of equal protection consists in according to one particular party a longer campaign for its candidates than to the other by reason of the primaries of the former being fixed for an earlier day than the primaries of the latter. Both political parties are treated precisely alike under similar circumstances. The right to hold a primary first is not given to either party by name, but to the one which had cast the highest vote for the highest State officer at the preceding election; and no Court has authority to assume that the same political party will at every election cast the highest vote for the highest State officer, and will, therefore, always be entitled to hold the first primary. The party which at the last election did cast the highest vote may at the next election cast fewer votes than the other party; in which event the latter party would at the

ensuing primaries be entitled to the earlier date. It is argued, however, that by reason of other provisions in *scc. III* the nomination of the ticket of the minority party may be postponed until a day or two before the election whereby it will be excluded from the official ballot altogether, and that in consequence there is a glaring discrimination against the candidates of that party. This argument proceeds upon the assumption that either fraudulent or crooked devices will be resorted to for the purpose of accomplishing that result; because it is not pretended that an honest administration of the law can produce such an effect. It is needless to say that an objection founded on an hypothesis like this cannot prevail as a constitutional infirmity of the statute.

The circumstance that the Act applies only to two of the political parties does not affect its validity. The General Assembly has the power to pass an Act regulating the primaries of one party alone, if it sees fit; and, if for reasons satisfactory to the legislative branch of the government, it is desirable that only the numerically stronger parties should be brought under the provisions of a primary election law, which has to do merely with the selection of candidates to be voted for and is in no way concerned with the elective franchise, it is not the province of the Courts to declare the measure invalid simply because other political parties polling a few scattering votes are not included within the enactment.

We now come to the question as to whether the Act empowers the County Commissioners to make the levy which is sought to be enjoined. The expenses which must be defrayed out of the funds contributed by the candidates in accordance with *sec. 112* of the Act, have already been mentioned; but there are other items of cost incident to the holding of the primaries which must be incurred by the Election Supervisors of the county in providing, under *sec. 105*, "the voting booths, ballot-boxes, stationery and such other paraphernalia as is used for general elections" and in delivering and setting "up the same at said places of registration ready for use." *Sec. 109* declares that "the ballot-boxes used at said primary elec-

tion shall be provided by the Board of Election Supervisors
of said county, and shall be delivered to said primary election
board at the same time as other paraphernalia hereinbefore
provided for." By *secs. 2 and 5 of Art. 33, Code of 1904*, the
necessary expenses incurred by the Supervisors in performing
the duties imposed by law are required to be paid by the
County Commissioners.    The Act now assailed imposes upon
the Supervisors the duties just indicated, and the performance
of those duties involves the expenditure of money.    It, there-
fore, follows from the provisions of the Code, that the County
Commissioners are not only authorized but required to make
a levy to pay the indebtedness contracted by the Supervisors
in discharging the duties prescribed by the Act of 1904.

Has the appellant shown on the face of his bill of complaint
such a pecuniary interest in the subject-matter of this contes-
tation as to give a Court of equity jurisdiction?  He alleges that
he is assessed as a taxpayer with property valued at six thou-
sand dollars.  The total sum levied under the *Act of 1904* is two
thousand dollars.    The taxable basis of Allegany County is
slightly over eighteen millions of dollars.    The rate needed to
produce the sum levied is a fraction over one cent and one
mill on each one hundred dollars of assessed property or
about eleven cents on each one thousand dollars thereof.  On
six thousand dollars the sum total demanded from the appel-
lant would be slightly in excess of sixty-six cents.    It is de-
clared by *sec. 102, Art. 16, Code of 1904*, that "The Courts
of equity in this State shall not hear, try, determine or give
relief in any cause, matter or thing wherein the original debt
or damages does not amount to twenty dollars."    The relief
sought in the pending case is an injunction to restrain the col-
lection of about sixty-six cents, a sum of money considerably
less than twenty dollars; and under the express words of the
Code the Court below had no jurisdiction to grant that relief.
*Kuenzel* v. *M. & C. C. Balto.*, 93 Md. 750; *Pentz* v. *Citizens
Fire Insurance Co.*, 35 Md. 73; *Reynolds* v. *Howard*, 3 Md.
Ch. Dec. 333.

There is another difficulty in the path of the appellant, and

it is this: The levy was made before the bill was filed, probably most of the sum so levied has been collected; the primaries have been held, the tickets have been nominated, the general election, at which the candidates selected at the primary have been voted for is over and now it is too late to ask a Court of equity to strike down every thing which has been done under the apparent, if not the actual, sanction of law. Under somewhat similar circumstances the Supreme Court refused to interfere with the results of an election in South Carolina. *Mills* v. *Green*, 159 U. S. 651.

We have intimated that there are some matters of detail in the Act of 1904 which are inharmonious, but they do not affect its validity and apparently did not interfere with its practical enforcement. They are blemishes which can be readily removed by the General Assembly. They need not be particularly alluded to inasmuch as they can have no bearing upon the questions actually involved in this proceeding and cannot influence in any way the solution of those questions.

As we agree with the Circuit Court in the order it made dismissing the bill of complaint that order will be affirmed without regard to the jurisdictional objection which, though not suggested at the argument, has been considered in this judgment.

*Order affirmed with costs above and below.*

(Decided November 16th, 1905.)