# THE JOURNAL AND TRIBUNE COMPANY *v.* UNITED STATES.

## APPEAL FROM THE COURT OF CLAIMS.

No. 86.   Argued November 10, 11, 1920.—Decided January 24, 1921.

1. The amount in controversy in a suit in the Court of Claims, for the purposes of an appeal to this court (Jud. Code, § 242) is deter-mined from the petition as amended, and is the whole amount claimed without deduction for a partial defense.   P. 584.
2. Where shipments of newspapers which their owner supposed were going by express at lower rates were in fact sent by mail, at higher but legal postal rates, through oversight of its agents, *held* that the United States was under no implied contract to reimburse it. P. 585.

53 Ct. Clms. 612, affirmed.

THE case is stated in the opinion.

*Mr. Benjamin Carter* for appellant.

*Mr. Assistant Attorney General Davis* for the United States.

MR. JUSTICE PITNEY delivered the opinion of the court.

This suit was brought to recover moneys paid for the transportation of newspapers in the mails, upon the ground that they were paid under mistake of fact. The Court of Claims dismissed the petition. 53 Ct. Clms. 612.

The facts are as follows: Claimant was engaged in publishing at Knoxville, Tennessee, a daily morning newspaper having a circulation in eastern Tennessee and adjacent parts of Virginia and North Carolina. It sent out a considerable part of its daily issue, destined to points on the United States postal route between Bristol and Chattanooga or on other postal routes connecting therewith, upon a Southern Railway train leaving Knoxville at 4 a. m. daily. The mail was dispatched in wagons from the main post office at Knoxville to the office of a mail transfer clerk at the railway station, the wagons being operated by persons having contracts for the purpose with the United States postal authorities. For claimant's convenience, the post office authorities consented that its newspapers might be weighed, for mailing, at the railway station instead of at the post office; claimant furnishing scales for the purpose. The mail wagons, under an arrangement between claimant and the contractor, called at claimant's place of business and carried the newspapers thence to the station. For this service claimant compensated the contractor or the driver. While this arrangement was in effect, and in the fall of the year 1906, claimant concluded to transport a part of the newspapers by express instead of mail, the express charges upon large lots being one-half the postal charge for transporting newspapers as second-class mail. It notified the express company of this purpose, and requested the express agent to be on the watch. There-

after it caused certain copies of its newspaper intended for newsdealers—theretofore sent by mail—to be wrapped in bundles and labeled "Express or baggage," with directions for throwing them off the train at the several destinations. Other copies of the paper, intended for subscribers and for newsdealers, were placed, properly addressed, in mail sacks. The method of transporting the papers to the railway station continued as before, those intended to go by express and those contained in mail sacks being carried upon the same wagon and the driver instructed to take them to the railway station, which he did, depositing bundles and sacks on the platform where all mail was deposited. In the fall of 1906, and for about a year thereafter, the express company's office adjoined that of the mail transfer clerk, the doors of the two opening upon the same platform. Claimant's representative had notified the express company's agent of the purpose to send certain of the papers by express, and pursuant to that notice, until about October, 1908, a porter from the express agent's office went to the platform, took the bundles of newspapers labeled as mentioned, and caused them to be transported by express. During the same period the United States mail transfer clerk took the sacks of papers, ascertained the net weight, and caused them to be transported as second-class mail matter upon the same train. The net weight was reported to the postmaster, and he charged to claimant's account the proper second-class postage thereon. The system adopted was that claimant made a deposit with the postmaster to cover postage to accrue, and renewed the deposit from time to time as it was reduced by charges against it. During the year 1907 the express company's office was removed to a distance of about 150 yards from the transfer clerk's office, and about a year after this the express messenger or porter ceased calling at the mail platform for the bundles of papers labeled for transportation by express. Why he did so does

not definitely appear. Thereafter and down to March 31, 1913, claimant's newspapers, whether in sacks or in bundles, were alike treated as mail matter by the United States mail transfer clerk, who weighed them all and reported the net weights to the postmaster, and the bundles and sacks were transported to their respective destinations as second-class mail matter. The charge appropriate for such mail matter was regularly made against claimant's deposit and paid by claimant during the entire period. In the spring of 1913 claimant's business manager, having his attention called to the fact that the express bills were small, discovered upon investigation that the bundles of papers labeled "Express" were being transported as second-class mail matter; and the present suit followed. During the period referred to approximately 358,442 pounds of newspapers were transported by the United States mail that were labeled "Express" and had been intended by claimant to be transported by express. Claimant paid thereon the regular second-class mail matter rate of 1 cent per pound, aggregating $3,584.42. The transportation of the same matter by express would have cost claimant $1,792.21.

The Government insists that this court is without jurisdiction to entertain the appeal, upon the ground that the amount in controversy is less than the three thousand dollars specified in the applicable provision, § 242 of the Judicial Code (Act of March 3, 1911, c. 231, 36 Stat. 1087, 1157). It is said that, viewing the claim in the most favorable light, and assuming a mistake was made entitling claimant to recover, the amount recoverable could not exceed the difference between what was paid as postage and what would have been paid had the newspapers been sent by express, that is to say $1,792.21. But, while in its original petition claimant prayed recovery for only the latter amount, in an amendment made by leave of the court it sought a return of the entire $3,584.42, on the

ground that there was a failure of consideration and it was entitled to a return of the whole sum as paid by mistake. The amount in controversy is to be determined by the amended rather than the original petition (*Washer* v. *Bullitt County,* 110 U. S. 558, 561–562); and since there is nothing in the nature of the case to prevent a recovery of the entire amount, were claimant's view of the law sustained, the amount claimed is the amount in controversy within the meaning of the jurisdictional act, notwithstanding there may be a defense to a part that would not extend to the entire claim. *Barry* v. *Edmunds,* 116 U. S. 550, 560–561; *Schunk* v. *Moline, etc., Co.,* 147 U. S. 500, 504–505; *Vance* v. *W. A. Vandercook Co. (No. 2),* 170 U. S. 468, 472; *Smithers* v. *Smith,* 204 U. S. 632, 642–643.

Upon the merits, we concur in the opinion of the Court of Claims that there is no legal basis for a recovery. The money was not paid under any such mistake as to render it inequitable for the United States to retain it. The bundles of newspapers actually were transported as mail by the Government, claimant being charged by the postmaster the amount fixed by law for the service rendered, and paying it without protest. No error is shown to have been made in the weights or in the rate charged. So far as any "mistake" appears from the findings it was that of claimant's agents in causing or permitting the papers to go by mail instead of by express as claimant intended. There is no finding attributing negligence or other fault to the mail transfer clerk; but if there were such and claimant's loss were attributable to it, this would not form a ground for recovery, since the United States has not consented to be sued in the Court of Claims for the torts of its officers or agents. *Bigby* v. *United States,* 188 U. S. 400, 404–407; *Hijo* v. *United States,* 194 U. S. 315, 323; *Tempel* v. *United States,* 248 U. S. 121, 129; *Ball Engineering Co.* v. *White & Co.,* 250 U. S. 46, 57.

*Judgment affirmed.*