HARRIS v. SPECIALTIES DISTRIBUTING CO.

1. APPEAL AND ERROR—JURISDICTION—APPEAL AS MATTER OF RIGHT.
   In sales manager's action against employer to recover various
   sums alleged to be owing on termination of employment,
   where aggregate of amounts involved was in excess of the
   jurisdictional minimum, defendant has the right to appeal
   (3 Comp. Laws 1929, § 15491).

2. MASTER AND SERVANT—COMMISSIONS—SUBSEQUENT CHANGE IN
   SALE.
   In sales manager's action for balance alleged to be due him
   from employer where plaintiff's commissions were due when
   a customer gave an order, signed an agreement and made a
   deposit thereon, fact that changes in the equipment purchased
   were subsequently made would not release employer from ob-
   ligation to plaintiff.

3. SAME—COMMISSIONS—COMPLETION OF SALE.
   In sales manager's nonjury action for balance due from em-
   ployer upon termination of employment, finding of trial court
   that defendant's president had assured plaintiff that latter
   would receive his commission on transaction with customer
   when completed was sustained by record.

4. SAME—SALES MANAGER'S ADVANCES TO SALESMEN.
   In sales manager's nonjury action against employer wherein
   recovery sought included items advanced to salesmen who
   were paid strictly on a commission basis with advances within
   certain limits permissible where plaintiff understood condi-
   tions under which they were permitted, had made advances
   to salesmen but failed to afford employer opportunity to
   deduct same before making final settlement with respective
   salesman, such items are disallowed.

5. APPEAL AND ERROR—WITNESSES—CREDIBILITY.
   On appeal in nonjury actions the Supreme Court recognizes that
   trial judges have an opportunity to hear and see witnesses

and judge of their credibility and feels bound by their determinations on questions of fact.

6. MASTER AND SERVANT—SALES MANAGER—"BIRD-DOG FEES"—REMAND.

In nonjury action against employer by sales manager of its commercial refrigeration department for balance due at termination of employment, where some orders were referred for filling by other concerns and such reference did not constitute a breach of duty, plaintiff's claim against defendant is reduced by amount of so-called "bird-dog fees" received from such other concerns for the referred business in view of the fact that plaintiff was paid a salary as well as commissions, it being permissible to take testimony on remand to determine amount of fees so received.

7. APPEAL AND ERROR—EXCLUSION OF EVIDENCE.

In sales manager's nonjury action against employer for balance alleged to be due upon termination of employment, exclusion of letter for purpose of showing employer was still doing business with the sender, because not binding on plaintiff, held, not prejudicial where defendant concedes it was inadmissible for purpose of proving its contents.

8. COSTS—FAILURE OF EITHER PARTY TO FULLY PREVAIL.

No costs are allowed where neither party fully prevails on appeal.

Appeal from Wayne; Richter (Theodore J.), J. Submitted January 19, 1943. (Docket No. 53, Calendar No. 42,218.) Decided May 18, 1943.

Assumpsit by Adelbert M. Harris against Specialties Distributing Company, a Michigan corporation, for amounts claimed due under a contract of employment. Judgment for plaintiff. Defendant appeals. Modified and affirmed.

*Albert J. Silber,* for plaintiff.

*George A. Hebert* (*Henry B. Graves,* of counsel), for defendant.

BUTZEL, J. Plaintiff prevailed in a suit brought against defendant in the common pleas court of the

city of Detroit. Defendant appealed and plaintiff recovered judgment in the circuit court for the county of Wayne against defendant for $562.92 and costs. Defendant again appeals. We are presented with a long record containing 75 assignments of error. The questions on appeal are those of fact. Very many small amounts are involved, some almost trivial, but inasmuch as the aggregate amount exceeds the jurisdictional minimum, defendant has the right to appeal.* We shall discuss only the main factual questions.

Plaintiff was the sales manager of the commercial refrigeration department of defendant, which also dealt in used household appliances and equipment. Defendant employed from 1 to 14 salesmen who worked under plaintiff. The latter received a salary of $200 per month plus a commission, generally 2½ per cent. on sales from his department. The salesmen under plaintiff worked on a commission basis and according to the instructions were limited to advances up to $2 a day for five days a week but for not more than two weeks. These advances were to be charged against commissions when earned.

On September 2, 1941, plaintiff tendered his resignation effective as of October 1, 1941, when, as he stated, he was going into business for himself. On September 15, 1941, plaintiff and defendant's general manager agreed that plaintiff should be released at once, but he was to receive his salary up to October 1, 1941. An effort was made to settle plaintiff's accounts and credits and debits. Many of them were settled and require no discussion. We shall discuss only the few main transactions which are in dispute.

At the time plaintiff left defendant's employment,

* See 3 Comp. Laws 1929, § 15491 (Stat. Ann. § 27.2591).—RE-PORTER.

a written contract had been entered into with one Joan Kisiel for equipment of the value of $6,099. Mrs. Kisiel had paid $200 on account. Plaintiff claims that defendant's president had agreed that plaintiff would receive his commission on this sale. Shortly thereafter but before delivery of the fixtures specified in the written order, Mrs. Kisiel moved her place of business and required different equipment adaptable for her new store instead of that prescribed in the previous written agreement. Defendant claims that entering into a new contract excused it from payment of a commission on an abandoned contract. This is not a case in which the agent could demand compensation only upon receipt of payment by the principal. *O'Connor* v. *March Automatic Irrigation Co.*, 242 Mich. 204. When the purchaser gave plaintiff the original order, signed the agreement, and paid a deposit, plaintiff became entitled to his commission. The fact that changes in the equipment were made subsequently did not release defendant from its obligation. Moreover, we are satisfied with the finding of the trial court that defendant's president assured plaintiff he would receive his commission when the transaction was completed.

A more serious question is raised in regard to a claim made by plaintiff of the sum of $86.80, consisting of 8 items marked "petty cash," which plaintiff claims he advanced to salesmen. Plaintiff was authorized to make advances up to the specified amount. To secure reimbursement, he was required each time to turn in a cash voucher signed by the salesman to whom the advance had been made. Defendant refused to pay these vouchers held by plaintiff. It contends that it knew nothing of their existence until the instant suit was begun and that in any case they represent private dealings between

plaintiff and the signers. We have examined the various items in detail. One of the advances was made as far back as December 16, 1939. A voucher representing another advance stated on its face that it could be deducted from drawing account no later than May 17, 1941. Some vouchers were marked "for advance," while one was marked "for personal." Two separate advances for the odd amount of $14.90 each were made on the same day, a year and a half before plaintiff left the company. Defendant not knowing about these advances had no opportunity to withhold the amounts from sums that became due to the salesmen. Although plaintiff understood that advances could be deducted only from commissions, he remained silent until a time long after salesmen had terminated their employment and their accounts had been settled. From a fair reading of the entire testimony, we hold that the amount of $86.80 should have been disallowed by the trial judge. Judgment should be reduced accordingly.

The most serious question presented is whether plaintiff was faithful to his trust in turning over to another concern two prospective customers who were in the market for what is known as the McCall "reach-in" refrigerator. Plaintiff stated that as was the custom he received from that concern a nominal gratuity known as a "bird-dog fee." At one time defendant did deal in refrigerators of this type, but according to plaintiff's testimony, partly corroborated by that of another salesman, the line had been virtually discontinued. There is a conflict in the testimony as to whether, during the summer of 1941, when the question arose, defendant had on hand or had received a small McCall refrigerator, but there is no claim that it had more than one in stock. Plaintiff positively testified that Robert P.

Turnbull, secretary-treasurer of the defendant, advised him not to sell the ''reach-in'' model because the company was unable to fill orders for such refrigerators and had already made cancellations. Robert P. Turnbull, who was called as a witness, did not deny this statement. Prior to the time plaintiff turned over the two sales, Mr. Mayhew, a salesman, obtained an order for a McCall ''reach-in'' refrigerator together with a deposit, but he was told that defendant was not going to be able to deliver, and that he should go out and see if he could place the order with someone else. It was understood that Mr. Mayhew would receive a commission from the other dealer. On the other hand, Leonard F. Turnbull testified that the order was not filled because of the poor credit of the prospective customer. The testimony does establish, however, that it was not unusual for defendant to direct orders to other concerns when it was unable to fill them itself and that in at least one instance it allowed its salesman to receive a small fee for such service.

We have read the testimony with great care and while it is possible that we would have come to a different conclusion had we been the trial judge, we cannot overlook the fact that both he and the judge of the court of common pleas had the opportunity to hear and see the witnesses and judge of their credibility. We feel bound by their determination. Since defendant had almost discontinued the sale of the particular type of equipment and had sanctioned the filling of an order by its own employee through another dealer, no breach of duty has been shown. In coming to our conclusion, we are impressed by the fact that in one instance, plaintiff closed a contract for a small refrigerator carried by defendant but placed the same purchaser's order for a ''reach-in'' model with another concern. As

a matter of practical self-interest, it would seem that plaintiff would have been more eager to place the order for both models with defendant and thus acquire his 2½ per cent. commission on the larger refrigerator instead of the small fee which he actually received. That the order was placed elsewhere supports the inference that the model requested was not available.

We do believe, however, that under no circumstances should plaintiff derive any profit from these two sales and his claim against defendant should be reduced by the amount of such fees or gratuities as he received. Plaintiff was receiving a salary as well as a commission and had no right to profit by his position at the expense of defendant. If necessary, testimony may be taken upon remanding of the case to determine the exact amount of the fees received.

Defendant sought to introduce a letter dated July 18, 1941, addressed to it by the McCall Refrigerator Corporation in order to show that it was still doing business with that company. The letter was excluded on the ground that it was not binding on plaintiff. Even if the entire letter had been introduced, it could have made no difference in the result and the alleged error would be nonprejudicial. The letter stated that the McCall Refrigerator Corporation had received from defendant an order for a $350 refrigerator which quoted an incorrect price, and that the McCall Refrigerator Corporation was inclosing several of its price lists and also a catalog and other literature available on its equipment. This would rather indicate that defendant's business with the McCall Refrigerator Corporation was exceedingly limited. Irrespective of the interpretation placed upon the letter, however, defendant

conceded that it was inadmissible for the purpose of proving its contents.

The case is remanded to the trial court with instructions to enter judgment in accordance with this opinion and at the request of defendant to take testimony in regard to the exact amount of the fees or gratuities plaintiff received and to reduce the amount due plaintiff by such amounts. No costs to either party.

BOYLES, C. J., and CHANDLER, NORTH, STARR, WIEST, BUSHNELL, and SHARPE, JJ., concurred.