# PHYLLIS POLLOKOFF ET AL. v. MARYLAND NATIONAL BANK

[No. 152, September Term, 1979.]

*Decided September 9, 1980.*

*Motion for reconsideration filed October 6, 1980; denied October 10, 1980.*

486

The cause was argued before MURPHY, C. J., and SMITH, ELDRIDGE, COLE, DAVIDSON and RODOWSKY, JJ.

*Sheldon H. Braiterman,* with whom were *Braiterman & Johnson, P.A.* on the brief, for appellants.

*William Leibovici, Assistant Attorney General,* with whom were *Stephen H. Sachs, Attorney General,* on the brief for Attorney General of Maryland and *C. Christopher Brown* on the brief for Consumer Council of Consumer Protection Division, for *amici curiae.*

*William J. Evans* for appellee.

RODOWSKY, J., delivered the opinion of the Court.

Phyllis Pollokoff and Robert Pollokoff, appellants, filed a declaration in the Superior Court of Baltimore City claiming "individually and on behalf of all others similarly situated" $3,000,000 in damages from the appellee, Maryland National Bank. The trial court granted the bank's motion raising preliminary objections on the ground that the minimum monetary jurisdictional requirements had not been met in this non-jury law action. The Court of Special Appeals affirmed. *Pollokoff v. Maryland National Bank,* 44 Md. App. 188, 407 A.2d 799 (1979). At issue is whether, in this proposed class action, the named plaintiffs may aggregate with their claim the claims they seek to assert on behalf of all members of the proposed class. Because our conclusion is that the "amount in controversy" required by Maryland Code (1980 Repl. Vol.), § 4-402 (d) (1) of the Courts and

Judicial Proceedings Article of at least $2,500.01 is to be measured without aggregating separate and distinct claims of multiple plaintiffs, we affirm.

Appellants allege that they opened a "Premium Passbook" account with appellee having a deposit term of 5 years which matured on March 23, 1978. The account provides that at the conclusion of the term all or any of the balance (including accrued interest) may be withdrawn. If the funds are neither withdrawn, nor instruction given to the bank as to disposition of the funds, the premium account terminates, a "Regular Passbook" account is opened by the bank in the names of the depositors and the balance is transferred to the latter account. Appellants were notified by the bank on May 18, 1978 that the premium account had matured and appellants withdrew the balance on May 19, 1978. The bank "ceased paying interest ... on March 23, 1978 and has refused to pay to the Plaintiffs any interest on funds deposited for the period from March 23, 1978 to May 19, 1978 ...." Described in the declaration as the plaintiff class are "those persons who have maintained a 'Premium Passbook account' with the ... Bank for a period of time subsequent to the maturation date of the account and to whom ... Bank has refused to pay interest on the balances so maintained for said periods." In addition to damages, the *ad damnum* seeks costs and a reasonable attorney's fee.

Appellee supported its motion raising preliminary objection with an affidavit by a bank officer accompanied by the rules and regulations relating to a regular account. Appellants did not controvert any of the matters of fact set forth with this motion. It appears that on March 23, 1978 the balance in appellants' premium account, inclusive of interest, was $4,001.11, that the regular account carried 4½% interest, compounded and paid semi-annually on June 30 and December 31, that funds must be deposited by January 2 or July 2 to earn interest for a semi-annual period, and that funds withdrawn before the end of an interest period do not receive interest. By utilizing the 4½% rate on the regular account balance for the 56 days from March 23 to

May 19, 1978, the bank says that the claim of the named plaintiffs amounts to $27.62.[1]

Appellants' claim is a civil action in contract. For such actions the line of division between the subject matter jurisdiction of the trial courts of general jurisdiction and of the District Court of Maryland has been drawn by the General Assembly by reference to "the amount in controversy." While § 4-401 (1) of the Courts Article provides that "the District Court has exclusive original civil jurisdiction" in an action in contract "if the debt or damages claimed do not exceed $5,000," this general rule is subject to exceptions set forth in § 4-402. Applicable here is § 4-402 (d) (1) under which a plaintiff has an election to file either in the District Court or in a trial court of general jurisdiction, such as the Superior Court of Baltimore City, "if the amount in controversy exceeds $2500." Although the claim of the named plaintiffs is short of this mark, it is contended[2] that the trial court should have looked to the total of all of the claims of all of the persons who would be members of the class which the named plaintiffs seek to represent.[3]

Maryland Rule 209 relates to class actions.[4] A rule of

---

1. Appellants' theory of the case as to liability is not immediately apparent from the declaration. Thus, it is not clear that appellee has correctly analyzed appellants' position. It may be that appellants rely on the application of the presumably higher, but unspecified, rate of interest which applied to the "Premium Passbook" account, or on the application of a rate derived from some other source or standard. Inasmuch as appellants rest their invocation of the original subject matter jurisdiction of the Superior Court of Baltimore City solely on the theory of aggregating claims in a proposed class action, and do not contend that their individual claim exceeds $2,500, the issue is properly before us.

2. The Attorney General and the Consumer Council of the Consumer Protection Division, pursuant to leave, filed a brief *amici curiae* and argued in support of appellants' position.

3. Because it concluded that the minimum jurisdictional amount may not be met by aggregating, the trial court made no factual determination of the total dollars which would result from aggregating.

4. The full text of Rule 209 is as follows:

Rule 209. Class Actions . . . . . . . . . . . . . . . . . Gen'l.

a. *When Allowed.*

When there is a question of law or fact common to persons of a numerous class whose joinder is impracticable, one or more of them whose claims or defenses are representative of the claims or defenses of all and who will fairly and adequately protect the interests of all may sue or be sued on behalf of all.

procedure does not extend, limit or affect the jurisdiction of any court. Md. Rule 1i. Thus appellants' invocation of Rule 209 cannot confer power on the trial court over the subject matter. Any conferral of power must be found in § 4-402 (d) (1) of the Courts Article.

Section 4-402 (d) (1) originated in Ch. 528 of the Acts of 1970 (Md. Code (1957, 1966 Repl. Vol., 1970 Cum. Supp.), Article 26, § 145 (c) (2)), which implemented the constitutional amendments by which the District Court of Maryland was created. This bill included provisions, now found in § 4-402 (e) (1) of the Courts Article, relating to demand for jury trial in a civil action in which "the amount in controversy exceeds" $500. Underlying this provision was an amendment to the Maryland Constitution, also as part of the organic creation of the District Court of Maryland, proposed by Ch. 789 of the Acts of 1969 and ratified November 3, 1970. Maryland Constitution, Article XV, § 6 (now Md. Declaration of Rights, Art. 23) which had provided that the "right of trial by Jury . . . in civil proceedings . . . where the amount in controversy exceeds the sum of five dollars, shall be inviolably preserved," was increased to $500. The 1970 District Court implementing legislation also provided for an appeal on the record from the District Court in a civil case "in which the amount in controversy exceeds $500 . . . ." Section 12-401 (d) of the Courts Article.

This Court has addressed the meaning of "amount in

---

b. *Elimination of Representative Character.*

Except where a class action is maintained of right, the court may adjudicate and declare the nonrepresentative character of the action and render judgment specifically determining that only the parties to the action are bound thereby.

c. *Protective Orders — Notice.*

The court at any stage of the action may impose such terms as shall fairly and adequately protect the interests of the persons on whose behalf the action is brought or defended, including an order that notice be given in such manner as it may direct: (1) of the pendency of the action, (2) of a proposed settlement, (3) of rendition of judgment, (4) to come in and present claims, or (5) of any other proceedings in the action.

d. *Court Approval for Compromise or Dismissal.*

Except with the approval of the court, a class action shall not be compromised or dismissed. (Added Sept. 15, 1961.)

controversy" as used in the jury trial and appeal provisions of the District Court legislation. In *Bringe v. Collins,* 274 Md. 338, 335 A.2d 670, *application for stay denied,* 421 U.S. 983, 95 S. Ct. 1986, 44 L. Ed. 2d 475 (1975) we held that Art. 23 of the Declaration of Rights guaranteed the right to a jury trial in a landlord's action brought under Maryland Code (1974), § 8-402 of the Real Property Article to recover possession of premises. Relief to the landlord-plaintiff in that case was denied because, *inter alia,* there was no "claim for money damages over $500.00 or a claim that the value of the right to possession exceeds $500.00." *Id.* at 347, 335 A.2d at 676. The appeal provision was involved in *Purvis v. Forrest Street Apartments,* 286 Md. 398, 408 A.2d 388 (1979). A landlord who had appealed from the District Court had failed to cause the record in the District Court to be transmitted as required if the amount in controversy exceeded $500. We held $500 was exceeded because in the District Court the landlord had made two distinct demands, one for back rent of $487.05 and the other for possession of the premises, the value of which could be ascertained in that case clearly to exceed $12.95.

In *Purvis,* for purposes of analyzing the "amount in controversy" test, we initially looked to federal cases. We quoted from *Journal & Tribune Co. v. United States,* 254 U.S. 581, 41 S. Ct. 202, 65 L. Ed. 415 (1921), a case dealing with appeals from the Court of Claims to the Supreme Court, and from *Agnew v. Dorman,* 1 F. Cas. 211 (Fed. Cas. No. 100) (C.C. Md. 1838) which involved the dollar amount of the matter in controversy on an appeal from a District Court of the United States to a Circuit Court of the United States for that district. On the issue in *Purvis* of valuing and totaling the claims of the same plaintiff for back rent and for possession we said:

> Finally, where a plaintiff has several different claims, it is the aggregate of the value of all claims which determines the amount in controversy. *Bullard v. Cisco,* 290 U.S. 179, 54 S. Ct. 177, 78 L. Ed. 254 (1933); *Frost v. Mighetto,* 22 Cal. App. 2d

612, 71 P.2d 932 (1937); *Brush v. Incorporated Town of Liscomb,* 202 Iowa 1155, 211 N.W. 856 (1927); *Harris v. Specialties Distributing Co.,* 305 Mich. 373, 9 N.W.2d 645 (1943). [286 Md. at 403, 408 A.2d at 390-91.]

*Bullard* involved diversity jurisdiction which then required in excess of $3,000 in controversy. The plaintiffs there were members of a bondholders protective committee who took assignments of the bonds of many holders, almost all of whose individual claims were less than $3,000. It was held that the assignments were pursuant to an agreement which created an express trust of which the plaintiffs were trustees and under which the plaintiffs obtained full legal title, so that jurisdiction was present. Had the assignments been merely for collection, so that each bondholder was the legal owner of his separate claim, there would have been no jurisdiction over those claims which were not in excess of $3,000. They would not have been aggregated.

We also said in *Purvis,* in comparing the critical "amount in controversy" language of § 4-402 (e) (jury trial) with § 12-401 (d) (appeal on record) that "[n]othing in the statutory language, legislative history, or any principle of statutory construction of which we are aware, justifies giving this same wording two different meanings." *Id.* at 404, 408 A.2d at 391. Obviously the interpretation of the critical language in § 4-402 (d) (1), involved here, should not be different.

When we expand beyond our decisions in a search for guidance in the application of "amount in controversy" to the facts presented here, we look to the federal cases. Beginning with the Judiciary Act of 1789, Ch. 20, § 11, 1 Stat. 78, diversity and general federal question jurisdiction has been qualified by a monetary minimum limitation, initially expressed in terms of the "matter in dispute" and, since the Act of March 3, 1911, Ch. 231, § 24, 36 Stat. 1091, in terms of "matter in controversy." A large body of decisional law has been developed in the federal courts interpreting the federal standard, which, while not binding, is a logical reference.

In the federal system, the law relating to the aggregation of multiple claims in measuring the matter in controversy is substantially settled in principle. Multiple claims of the same plaintiff against the same defendant, which are less than the jurisdictional minimum, may be aggregated. 14 C. Wright and A. Miller, *Federal Practice and Procedure* § 3704, at 411 (1976). We reached the same result in *Purvis. And see Reese v. Hawks,* 63 Md. 130 (1885). But, in the federal courts, where separate claims of different plaintiffs are involved, they may not be aggregated, even if a common question of fact or law is presented. While the joinder of such claims may be proper as a pleading matter, including joinder by way of a class action procedure, subject matter jurisdiction is not thereby expanded.

At least as early as 1832 the Supreme Court in *Oliver v. Alexander,* 31 U.S. (6 Pet.) 143, 8 L. Ed. 349 held that distinct and several claims for wages of the plaintiff seamen, no one of which met the minimum amount required for an appeal to the Court, could not be consolidated into an aggregate to support the appeal. Each cause of action was several and not joint. So, claims of children that each has been omitted as a legatee from a parent's will are separate and distinct, and not to be aggregated. *Pinel v. Pinel,* 240 U.S. 594, 36 S. Ct. 416, 60 L. Ed. 817 (1916). Nor may independent businesses affected by fees imposed under a challenged statute add together the amounts of their separate controversies for diversity jurisdiction. *Clark v. Paul Gray, Inc.,* 306 U.S. 583, 59 S. Ct. 744, 83 L. Ed. 1001 (1939). But, "when several plaintiffs unite to enforce a single title or right, in which they have a common and undivided interest, it is enough if their interests collectively equal the jurisdictional amount." *Troy Bank v. G.A. Whitehead & Co.,* 222 U.S. 39, 40-41, 32 S. Ct. 9, 56 L. Ed. 81, 82 (1911) (Suit to enforce vendor's lien held in common by plaintiffs. The matter in dispute is measured by the value of the common security and not by the claims of each plaintiff under their separate notes.).

Following the 1966 amendment to Fed. R. Civ. P. 23 (class actions) two "spurious" class action cases came before the

Supreme Court in *Snyder v. Harris,* 394 U.S. 332, 89 S. Ct. 1053, 22 L. Ed. 2d 319 (1969). One case was a claim against directors by a shareholder who sought on behalf of all the shareholders, but not on behalf of the corporation, the amounts in excess of market value received by the defendants for sale of their shares in the corporation. The other case claimed overcharges for service by a public utility. Aggregation of the claims of proposed members of the classes to satisfy the amount in controversy was rejected. Justice Black for the Court explained as follows:

> The traditional judicial interpretation . . . has been from the beginning that the separate and distinct claims of two or more plaintiffs cannot be aggregated in order to satisfy the jurisdictional amount requirement . . . . It is contended, however, that the adoption of a 1966 amendment to Rule 23 effectuated a change in this jurisdictional doctrine. Under old Rule 23, class actions were divided into three categories which came to be known as "true," "hybrid," and "spurious." True class actions were those in which the rights of the different class members were common and undivided; in such cases aggregation was permitted. Spurious class actions, on the other hand, were in essence merely a form of permissive joinder in which parties with separate and distinct claims were allowed to litigate those claims in a single suit simply because the different claims involved common questions of law or fact. In such cases aggregation was not permitted: each plaintiff had to show that his individual claim exceeded the jurisdictional amount. The 1966 amendment to Rule 23 replaced the old categories with a functional approach to class actions . . . . [T]he Court of Appeals for the Tenth Circuit held that these changes in Rule 23 changed the jurisdictional amount doctrine as well . . . . We disagree and conclude . . . that the adoption of amended Rule 23 did not and could not have brought about this change in the scope of the

congressionally enacted grant of jurisdiction to the district courts. [*Id.* at 335-36, 89 S. Ct. at 1056-57, 22 L. Ed. 2d at 323-24.]

*Zahn v. International Paper Co.,* 414 U.S. 291, 94 S. Ct. 505, 38 L. Ed. 2d 511 (1973) presented an attempted class action on behalf of some 200 owners and lessees of property fronting on Lake Champlain for damages to their respective properties from alleged water pollution. It was again held that no action could be maintained on behalf of those plaintiffs whose separate and distinct claims could not satisfy the jurisdictional amount, and, because it was not feasible to define a class of those whose claims exceeded that amount, it was proper to deny class action certification. The Court refused to disturb its "unbroken line of decisions" and the "accepted view" of the lower federal courts.

In the instant case the claims of the members of the proposed class are clearly separate and distinct. Each former depositor in a "premium" account had his own specific contract with the bank. The common factor of a contract which automatically converted a given depositor's premium account on maturity into a regular account and which is legally indistinguishable from the contract between the named plaintiffs and the bank is one of the criteria for determining membership in the proposed class. Essentially a claim is made for breach of each contract between each such depositor and the bank. Thus, the claims here asserted could not be aggregated to satisfy federal jurisdiction.

Appellants, however, note that in *Snyder v. Harris, supra,* the Court recognized that "[i]t is linguistically possible . . . to interpret the old congressional phrase 'matter in controversy' as including all claims that can be joined or brought in a single suit through the class action device." *Id.* at 338, 89 S. Ct. at 1058, 22 L. Ed. 2d at 325. Appellants argue that *Snyder* rejected the aggregation approach which the statutory words could accommodate because of a congressional policy to check the rising caseload of the federal courts in diversity cases, and say that policy has no application in state courts. We do not read *Snyder* quite that

way. *Snyder* is unmistakably premised on the longstanding interpretation of the phrase "matter in controversy." Reference was made to the policy reflected by congressional increases in the jurisdictional amount only in the context of rejecting the alternative of overruling the settled precedents.

Moreover, the Court in *Snyder* further reasoned:

> Any change in the doctrine of aggregation in class action cases ... would inescapably have to be applied as well to the liberal joinder [of parties] provisions of Rule 20 and to the joinder of claims provisions of Rule 18. The result would be to allow aggregation of practically any claims of any parties that for any reason happen to be brought together in a single action. This would seriously undercut the purpose of the jurisdictional amount requirement. [*Id.* at 339-40, 89 S. Ct. at 1058-59, 22 L. Ed. 2d at 326.]

This reasoning has application to any trial court minimum jurisdictional amount, including that dividing the circuit courts and the District Court of Maryland. At least two Maryland trial courts have not aggregated separate and distinct claims of proposed class action plaintiffs by analogy to the federal rule set forth in *Snyder v. Harris. See Little v. Tinley,* No. C-9326 (Cir. Ct. A.A. Co.) (The Daily Record, Dec. 14, 1977) (Thieme, J.) (as to contract claims on behalf of tenants in apartment project); *Siegrist v. The Continental Insurance Company,* No. 134610 (Sup. Ct. Balto. City, Nov. 10, 1972) (The Daily Record, Nov. 27, 1972) (Levin, J.) (alleged premium overcharges by insurer of its Maryland policyholders for homeowner's coverage. Case transferred to equity as action for discovery and accounting.). *Accord* 1 G. Liebmann, *District Court Law and Practice* § 92, at 173-74 (1976). We do not believe it has been the experience of the bar generally to consider Maryland practice as permitting a number of plaintiffs, whose separate and independent claims are each within the exclusive original jurisdiction of the District Court, or previously of a people's court, trial magis-

trate or justice of peace, to band together because of common questions of fact and law, and maintain a law action in a circuit court for money damages. But there appears to be no decision of this Court directly on that point.

Appellants assert the aggregation concept is supported in *Sun Cab Co. v. Cloud,* 162 Md. 419, 159 A. 922 (1932). It is distinguishable from the matter at bar. That case was an action to enjoin a referendum election because of the alleged invalidity of the petitions. The case, under the then practice, was an appeal from the overruling of a demurrer to the complaint. The ground of demurrer relevant here was that "the complainants have no right as taxpayers to the relief they seek ... because they show no special injury distinct and peculiar to themselves ...." *Id.* at 423, 159 A. at 923. The full passage from this Court's opinion on which appellants rely reads:

> [A]ccording to the settled practice, taxpayers interested in avoiding the waste of funds derived from taxation which would be involved in conducting the void referendum may make application to the court for the remedy. In the cases so far cited on the power of the court to deal with the subject-matter ... taxpayers have been the complainants as to whom the remedy was given .... The property loss to them, or the loss of civil rights, which according to our rules must be established as a foundation for the interposition of a court of equity, may be small, when apportioned among them. Probably the loss to one taxpayer in any such proceeding seldom amounts to twenty dollars, the minimum of the debt or damage which a court of equity may consider. Code, art. 16, sec. 109 [5] *Kenneweg v. Allegany County,* 102 Md. 119,

---

5. Reference is to the 1924 Maryland Code. The provision is unchanged and is now Maryland Code (1957, 1973 Repl. Vol.), Art. 16, § 118 which reads:

> The courts of equity in this State shall not hear, try, determine or give relief in any cause, matter or thing wherein the original debt or damages does [*sic*] not amount to twenty dollars.

62 A. 249, 250. But, when a suit is instituted by one or more taxpayers in representation of all, the case is quite different. The amount involved and sought to be protected is then the total amount of loss to taxpayers, or the total amount which may be wrongfully expended . . . . [A] bill filed in the name of one or more of the taxable inhabitants for themselves and all others similarly situated the court should regard as *"in the nature of a public proceeding* to test the validity of the corporate acts sought to be impeached and deal with and control it accordingly." 4 Dillon, *Municipal Corporations* (5th Ed.), sec. 1587; *Kelly, Piet & Co. v. Baltimore,* 53 Md. 134, 141. [*Id.* at 426-27, 159 A. at 925 (Emphasis added).]

This portion of *Sun Cab* is directed to the question of standing, and not to jurisdiction over the subject matter. The fundamental aspect of standing is that it focuses on the party seeking to get his complaint before the court and not on the issues he wishes to have adjudicated. *Flast v. Cohen,* 392 U.S. 83, 99, 88 S. Ct. 1942, 1952, 20 L. Ed. 2d 947, 961 (1968). From at least 1869, in *Mayor and City Council of Baltimore v. Gill,* 31 Md. 375, 394, we have recognized as "well settled that public wrongs cannot be redressed at the suit of individuals, who have no other interest in the matter than the rest of the public" but that "complainants, as taxpayers of the [jurisdiction], and others similarly situated, in whose behalf as well as their own [a] bill is filed, constitute a class specially damaged by the alleged unlawful act of the [governmental entity], in the alleged increase of the burden of taxation . . . ." *Sun Cab* has been viewed as addressing this issue of the requisite special damage or special interest. *See, e.g., Citizens Planning and Housing Ass'n. v. County Executive of Baltimore County,* 273 Md. 333, 339-40, 329 A.2d 681, 684-85 (1974) (Levine, J. for the Court) and the dissenting opinion of Eldridge, J. *Id.* at 347, 329 A.2d at 689.

If, however, we assume, without deciding, both that present Art. 16, § 118 establishes minimum subject matter

jurisdiction for courts of equity, and that *Sun Cab* interpreted that statute, still *Sun Cab* presented a type of class action which is substantially different from the one proposed by appellants here. In a "public proceeding to test the validity" of public action, or to redress a public wrong, it is appropriate to speak of the "total amount of loss to taxpayers" or of "the total amount which may be wrongfully expended." Taxpayers' suits bear more of an analogy to a shareholder's derivative suit, in which the doctrine of representation has historically also been applied, than they do to the spurious class which appellants here seek to represent. The instant matter presents a proposed joinder of separate and distinct claims of an unknown number of persons, to each of whom their particular recovery, if any, would inure. *Sun Cab* is little guidance for the interpretation of "amount in controversy" in the present context.

Two additional arguments advanced by appellants are interrelated. Rule 209 does not apply in the District Court of Maryland. See Rule 1a (1). As a result appellants say that a class action may not be maintained in the District Court and, without aggregating, no class action procedure is available in any court of this State for a claim which does not exceed $2,500. The question of whether class action procedure of any type is available in the District Court is not before us and we express no opinion on that point. Appellants also cite *Judson School v. Wick,* 108 Ariz. 176, 494 P.2d 698 (1972) which held that the $200 "amount involved," under the Arizona demarcation between justices of the peace and superior courts, was satisfied by aggregating claims in a class action. A majority of that court took the view that a justice of the peace court was clearly not equipped to handle the serious legal questions frequently posed by class actions and that it was too expensive for one litigant alone to prosecute a small claim which could be determinative of the rights of many. The dissent by one justice considered the statute as vesting exclusive jurisdiction in the justice courts and that an individual claim for less than $200 neither gained nor lost its nature merely because others had similar small claims.

Aggregation has been recognized in Alabama based on a presumption against divestiture of jurisdiction from a court to a lower court and on an absence of unequivocal legislative intent to divest the general trial courts of subject matter jurisdiction in class actions. One judge dissented. *Thomas v. Liberty National Life Insurance Co.,* 368 So. 2d 254 (Ala. 1979). In Michigan, class actions involving claims which do not exceed the stated minimum are nevertheless allowed in the circuit courts as actions which are "historically equitable in nature." *See Paley v. Coca Cola Co.,* 389 Mich. 583, 209 N.W.2d 232 (1973) where the result of an evenly divided Supreme Court was to affirm the intermediate appellate court which had allowed aggregation in order to preserve class actions at the circuit court level where a class action rule applied. *Paley v. Coca Cola Co.,* 39 Mich. App. 379, 197 N.W.2d 478 (1972).

Aggregation in class actions was rejected in Ohio, *Davies v. Columbia Gas & Electric Corp.,* 151 Ohio St. 417, 86 N.E.2d 603 (1949), but subsequently expressly permitted by rule. See Ohio Rules of Civil Procedure, Rule 23 (F).

Claims in a class action may not be aggregated to meet minimum trial court jurisdictional monetary requirements in Florida, *Curtis Publishing Co. v. Bader,* 266 So. 2d 78 (Fla. App. 3d), *cert. denied,* 271 So. 2d 142 (Fla. 1972), or to meet appellate jurisdiction in Virginia, *Bolling v. Old Dominion Power Co.,* 181 Va. 368, 25 S.E.2d 266 (1943). To the same effect see *Berberian v. New England T. & T. Co.,* 117 R.I. 629, 369 A.2d 1109 (1977).

Of the many decisions bearing on the subject issue as a matter of state practice, we find particularly persuasive the rationale of the Court of Appeals of Kentucky in *Kentucky Department Store, Inc. v. Fidelity-Phenix Fire Insurance Co.,* 351 S.W.2d 508 (Ky. 1961). In rejecting aggregation in a spurious class action seeking recovery of monies paid as part of insurance premiums, the court reasoned:

It has been uniformly held in this jurisdiction that the independent claims of several plaintiffs against the same defendant, even though they may

be and are joined . . . in one action, cannot be added together for the purposes of jurisdictional amount . . . . If the claims of parties who actually join as plaintiffs cannot be aggregated, it is an apodictic proposition that neither can the claims of non-appearing parties. [*Id.* at 509.]

Looking at the issue here as a matter of fundamental jurisdiction, and without the embellishment of a request for class action certification, we believe the general rule has been expressed in Annot., *Criterion of Jurisdictional Amount Where Several Claimants are Interested,* 72 A.L.R. 193, 194-95 (1931), where it is said:

Where several claimants have several and distinct demands against a defendant or defendants, and join in a single suit to enforce them, they cannot be added together to make up the required jurisdictional amount, but each separate claim furnishes the jurisdictional test.

*Accord, e.g., Lewis v. Rosen,* 149 Conn. 734, 181 A.2d 592 (1962); *State ex rel. City of West Palm Beach v. Chillingworth,* 100 Fla. 489, 129 So. 816 (1930); *Albion Elevator Co. v. Chicago and North Western Transportation Co.,* 254 N.W.2d 6 (Iowa), *cert. denied sub nom. Chicago and North Western Transportation Co. v. Brandt Elevator, Inc.,* 434 U.S. 904, 98 S. Ct. 301, 54 L. Ed. 2d 190 (1977); *Smaby v. Shrauger,* 9 Wash. 2d 691, 115 P.2d 967 (1941).

Long before the adoption of federal or Maryland class action rules, the federal courts had determined the amount of the matter in controversy by analyzing the claim asserted. Separate claims of separate plaintiffs were viewed severally and not aggregated. In Maryland civil procedure, the basic building block is the cause of action. Recognition by Md. Rule 209 that the class action procedure could be used in appropriate cases at law did not create a new cause of action or claim. In this case appellants assert their own claim for breach of contract and also seek to have the trial court recognize them as the representative of others whose respective claims for breach of their respective, similar

contracts, appellants would assert in the same action. Were the action to proceed as a class action, there would still be a series of separate causes of action asserted. Were the amount in controversy here to be determined by aggregating the series of claims, it would not be because the request for approval of class action procedure has converted many separate causes of action into one, but because the rule would be that separate causes of action of unnamed plaintiffs are aggregated with the cause of action asserted by the representative. Under such a rule, the aggregation of the separate claims of named plaintiffs which are joined pursuant to Md. Rule 313 is logically indistinguishable. Thus, under the hypothesis, if A has a contract claim for $250 and B has a similar, but separate, contract claim for $251 against the same defendant, they could, by joining in a single action and praying a jury trial, have their claims determined in a circuit court. Yet, each claim would be in an amount which has been placed by the General Assembly in the exclusive jurisdiction of the District Court. Indeed, the Maryland Constitution has been amended to achieve that result.

We do not believe that the legislative allocation of original subject matter jurisdiction is to be disturbed because the joinder sought here may be permitted as a matter of pleading. We hold that multiple plaintiffs, named or unnamed, whose separate and distinct claims fall within the exclusive original jurisdiction of the District Court may not invoke the original jurisdiction of the circuit court by joining in an action and aggregating their claims.

Because the separate and distinct claim of the appellants concededly does not exceed $2,500, the Superior Court of Baltimore City did not have jurisdiction over the subject matter and the motion raising preliminary objection was properly granted.

*Judgment of the Court of Special*
*Appeals affirmed.*
*Appellants to pay the costs.*