510 A.2d 540

**Margaret CARROLL**

v.

**HOUSING OPPORTUNITIES COMMISSION.**

**No. 149, Sept. Term, 1984.**

Court of Appeals of Maryland.

June 27, 1986.

Linda Haspel, Legal Aid Bureau, Inc., Silver Spring, for appellant.

Kenneth B. Tecler, Rockville, for appellee.

Argued before MURPHY, C.J., SMITH, ELDRIDGE, COLE, RODOWSKY and McAULIFFE, JJ., and W. AL-BERT MENCHINE, Associate Judge of the Court of Special Appeals (retired), specially assigned.

ELDRIDGE, Judge.

This case concerns the right to a jury trial in an action by a public housing authority to recover possession of a rental unit from a tenant in a federally funded public housing complex.

Since 1975 Margaret Carroll has lived with her daughter, Susie, and Susie's young child in a two bedroom townhouse in a federally funded public housing complex known as Emory Grove. Emory Grove, which was built pursuant to federal low-income housing statutes, is owned and operated by the Housing Opportunities Commission of Montgomery County, a government agency created by Maryland Code (1957, 1982 Repl.Vol., 1985 Cum.Supp.), Art. 44A, § 8A, to act as the public housing authority in Montgomery County.

Each resident at Emory Grove pays a percentage of his or her income as rent. When the Housing Opportunities Commission filed this suit, tenants were required to pay 27% of household income as rent if they had resided in the unit prior to 1983 and 30% if they had not. In light of Mrs. Carroll's household income, consisting only of monthly welfare benefits, and her residence in Emory Grove since 1975, she pays $76.00 per month rent. The United States Department of Housing and Urban Development subsidizes Emory Grove, paying the Housing Opportunities Commission the difference between Emory Grove's operating expenses and the amount collected in rent.

In November 1982 Jim Riggs, a guest of Mrs. Carroll, was involved in a fight with another visitor to the Emory Grove complex. The Housing Opportunities Commission held a hearing to determine whether this incident constituted a violation of Mrs. Carroll's lease. The Commission's

Hearing Board decided that Mrs. Carroll had violated the following provisions of her lease:

"VI.   OCCUPANCY OF THE DWELLING UNIT
   A.   Tenant Responsibility.
      4.   Not to engage in conduct which would disturb the peace and order of the neighborhood.

              *      *      *      *      *      *

      11.   To obey all rules and local ordinances covering the dwelling and with all rules or regulations now or later adopted by the Authority for the safety, comfort and welfare of the tenants, the housing projects, and the community.

              *      *      *      *      *      *

      12.   To prevent any member of Tenant's family or guests from violating any of the Conditions of Occupancy as set forth herein.   Violations of the Conditions of Occupancy by a member of Tenant's family or guest shall constitute a violation of such conditions by the Tenant."

The Hearing Board further decided that Mrs. Carroll's failure to control her guest was a serious violation which required her to vacate the unit.

Mrs. Carroll believed that this one incident in which she was not personally involved was not sufficient to justify the termination of her occupancy and of her federal rent subsidy.   She refused to move out of her unit, and the Housing Opportunities Commission instituted a tenant holding over action in the District Court of Maryland pursuant to Maryland Code (1974, 1981 Repl.Vol., 1985 Cum.Supp.), § 8–402 of the Real Property Article.   Mrs. Carroll filed a timely demand for a jury trial, asserting that the value of continued possession of her townhouse exceeded $500.00.

Mrs. Carroll's demand for a jury trial divested the District Court of jurisdiction, and her case was transferred to the Circuit Court for Montgomery County.   *Vogel v. Grant,* 300 Md. 690, 696, 481 A.2d 186 (1984).   On August 9, 1984, the day set for trial, both parties appeared ready for trial

with their witnesses. At that time, the circuit judge, sua sponte, questioned whether Mrs. Carroll was entitled to a jury trial. In response to the judge's remarks, counsel for the Commission orally moved to strike the jury demand on the ground that the amount in controversy was less than $500 and that the case should therefore be tried in the District Court without a jury. The circuit court immediately heard oral argument from both parties and then ruled that Mrs. Carroll had not established her right to a jury trial in this case. On the next day, August 10, 1984, an order was entered which recited that the circuit court did not have subject matter jurisdiction and remanded the case to the District Court for trial.

On August 21, 1984, Mrs. Carroll filed in the circuit court a Motion for Reconsideration, accompanied by an affidavit and a memorandum of points and authorities, and requested a hearing on the motion. Based on information from the Federal Register and from employees of the federal Department of Housing and Urban Development and of the Housing Opportunities Commission, Mrs. Carroll claimed that the fair market value of her townhouse was at least $497 per month. She also claimed that she had a right to continued occupancy of the townhouse until there existed "good cause" for eviction, and that she would incur moving expenses. Furthermore, she contended that she was not required to prove that the amount in controversy exceeded $500 to be entitled to a jury trial, and that her good faith claim that it did exceed this amount was sufficient. On August 27, 1984, the circuit court denied Mrs. Carroll's Motion for Reconsideration and her request for a hearing. On September 7th, within thirty days of the original order remanding the case to the District Court, Mrs. Carroll appealed both the denial of her Motion for Reconsideration and the original ruling denying her a jury trial. We issued a writ of certiorari on our own motion before argument in the Court of Special Appeals.

## I.

In the briefs and at oral argument, the parties raised a question as to whether the circuit court's order denying Mrs. Carroll a jury trial and remanding the case to the District Court is appealable. The appellant argued that the order is appealable, not as a final judgment in the traditional sense, but under the collateral order doctrine. In our view, no issue concerning the collateral order doctrine is presented, because the circuit court's order is a final judgment terminating the litigation.

This case differs from those where a court denies a party's demand for a jury trial but where the same court will hear the initial trial on the merits without a jury. Under those circumstances, the order denying a jury trial would not be a final judgment in the traditional sense. *See Vogel v. Grant, supra,* 300 Md. at 701, 481 A.2d 186. Such an order could be appealed before a decision on the merits only if it satisfied the collateral order doctrine. *Parrott v. State,* 301 Md. 411, 417–426, 483 A.2d 68 (1984). *See also Kawamura v. State,* 299 Md. 276, 282–283 n. 5, 473 A.2d 438 (1984).

In the present case, however, the circuit court's orders denied Mrs. Carroll all relief in the circuit court; they completely terminated the action in circuit court, remanding the case to the District Court for trial. Nothing was left to be done in the circuit court. Accordingly, the order was a final appealable judgment. *See Litton Bionetics v. Glen Constr.,* 292 Md. 34, 42, 437 A.2d 208 (1981); *Schultz v. Pritts,* 291 Md. 1, 5–6, 432 A.2d 1319 (1981); *Department of Public Safety v. LeVan,* 288 Md. 533, 540–544, 419 A.2d 1052 (1980).

## II.

The Maryland Constitution, in Article 23 of the Declaration of Rights, guarantees a right to jury trial in those types of civil cases to which the right historically attached if the amount in controversy exceeds $500. *Vogel v. Grant,*

*supra,* 300 Md. at 695, 481 A.2d 186; *Bringe v. Collins,* 274 Md. 338, 346–347, 335 A.2d 670, *application for stay denied,* 421 U.S. 983, 95 S.Ct. 1986, 44 L.Ed.2d 475 (1975). Similarly, Maryland Code (1974, 1984 Repl.Vol., 1985 Cum. Supp.), § 4–402(e) of the Courts and Judicial Proceedings Article provides:

"(e) Jury trial—(1) In a civil action in which the amount in controversy exceeds $500, exclusive of attorney's fees if attorney's fees are recoverable by law or contract, a party may demand a jury trial pursuant to the Maryland Rules."

This Court stated in *Bringe v. Collins, supra,* 274 Md. at 346–347, 335 A.2d 670, that "an action under Code (1974), § 8–402 of the Real Property Article, by a landlord to recover possession of his premises, is historically an action at law to which the right to a jury trial has always attached in this State." The Court further explained that "[f]or a party in a landlord-tenant action to be entitled to a jury trial, there must either be a claim for money damages over $500.00 or a claim that the value of the right to possession exceeds $500.00." 274 Md. at 347.

In *Bringe,* this Court held there was no right to a jury trial because there was neither a claim for money damages over $500 nor a claim that the value of the right to possession exceeded $500. In the present case, Mrs. Carroll stated, in her demand for a jury trial: "Defendant claims that the value of her right to possession exceeds $500.00."

Mrs. Carroll contends that her good faith claim that the value of continued possession exceeds $500 is sufficient to entitle her to a jury trial. She further contends that when her entitlement to a jury trial was questioned by the circuit court she should not have been required to demonstrate that the amount in controversy was greater than $500. She asserts that she should only have been required to show that it was not legally certain that the value of her right to possession was less than $500.

The Commission, on the other hand, asserts that Mrs. Carroll had the burden of proving that the amount in

controversy exceeded $500.00, that she did not offer such proof in a timely and proper fashion, and that, therefore, the circuit court properly held that she was not entitled to a jury trial.

We agree with Mrs. Carroll that a claim that the amount in controversy exceeds $500 establishes the claimant's right to a jury trial unless it clearly appears that the claim is actually for less than that amount.

This Court stated in *Bringe v. Collins, supra,* 274 Md. at 347, 279 A.2d 388, that "a *claim* for money damages over $500.00 or a *claim* that the value of the right to possession exceeds $500.00" entitles a party to a jury trial. (Emphasis provided). *See Mulchansingh v. Columbia Manage.,* 33 Md.App. 304, 309, 364 A.2d 78 (1976); *Cheek v. J.B.G. Properties, Inc.,* 28 Md.App. 29, 47–49, 344 A.2d 180 (1975).

In *Purvis v. Forest Street Apts.,* 286 Md. 398, 408 A.2d 388 (1979), we discussed the meaning of "amount in controversy" in another context. Maryland Code (1974, 1979 Cum.Supp.), § 12–401(d) of the Courts and Judicial Proceedings Article provided that an appeal from the District Court would be heard in the circuit court on the record in "a civil case in which the amount in controversy exceeds $500." [1] The Court noted that the same phrase, "amount in controversy," appears in § 12–401(d) and in § 4–402(e) dealing with the right to jury trial and that "[n]othing in the statutory language, legislative history, or any principle of statutory construction of which we are aware, justifies giving this same wording two different meanings." 286 Md. at 404, 408 A.2d 388. The *Purvis* opinion stated that under "the amount in controversy" test "courts ordinarily look to the demand in the pleading setting forth the plaintiff's claim, including any amendment in the trial court." *Id.* at 402, 408 A.2d 388. This Court specifically held that

---

1. Code (1974, 1984 Repl.Vol.), § 12–401(d) of the Courts and Judicial Proceedings Article, now provides for an appeal on the record if the amount in controversy exceeds $1000.

the value of the right to possession must be considered, *id.* at 404, 408 A.2d 388, and that where one plaintiff has several different claims it is the aggregate value of all *claims* which determines the amount in controversy. (*Id.* at 403, 408 A.2d 388, emphasis added).

■ Taken together, *Bringe* and *Purvis* establish that the *claims* of the parties, for money damages or for the right to possession, determine the amount in controversy. They do not, however, discuss the burden of proof and the standards to be applied when the amount or value of a claim is questioned.

In *Pollokoff v. Maryland Nat'l Bank*, 288 Md. 485, 491, 418 A.2d 1201 (1980), Judge Rodowsky stated for the Court as follows:

"When we expand beyond our decisions in a search for guidance in the application of 'amount in controversy' to the facts presented here, we look to the federal cases. Beginning with the Judiciary Act of 1789, Ch. 20, § 11, 1 Stat. 78, diversity and general federal question jurisdiction has been qualified by a monetary minimum limitation, initially expressed in terms of the 'matter in dispute' and since the Act of March 3, 1911, Ch. 231, § 24, 36 Stat. 1091, in terms of 'matter in controversy.' A large body of decisional law has been developed in the federal courts interpreting the federal standard, which, while not binding, is a logical reference."

Consequently, federal cases on this issue should be regarded as highly persuasive.

In *Horton v. Liberty Mutual Insurance Co.*, 367 U.S. 348, 81 S.Ct. 1570, 6 L.Ed. 890 (1961), Justice Black, speaking for the United States Supreme Court, reviewed the standard set forth in the federal cases:

"The general federal rule has long been to decide what the amount in controversy is from the complaint itself, unless it appears or is in some way shown that the amount stated in the complaint is not claimed 'in good faith.' In deciding this question of good faith we have said that 'it must appear to a legal certainty that the

claim is really for less than the jurisdictional amount to justify dismissal.'" 367 U.S. at 353, 81 S.Ct. at 1573 (quoting *St. Paul Mercury Indemnity Co. v. Red Cab Co.*, 303 U.S. 283, 288–289, 58 S.Ct. 586, 590, 82 L.Ed. 845 (1938)).[2]

*See* 1 Moore's Federal Practice ¶ 0.92[1] (2d ed. 1986); C. Wright *Law of Federal Courts* § 33 at 181–185 (4th ed. 1983). State courts which have considered the matter have adopted this federal rule. *See, e.g., Miami Copper Co. v. State*, 17 Ariz. 179, 183, 149 P. 758 (1915); *Richter Jewelry Co. v. Harrison*, 147 Fla. 732, 3 So.2d 387 (1941); *Williams v. Gibson*, 232 N.C. 133, 59 S.E.2d 602, 604 (1950); *Berberian v. New England T. & T. Co.*, 117 R.I. 629, 633–634, 369 A.2d 1109 (1977); *Guerra v. Weatherly*, 291 S.W.2d 493, 495 (Tex.Civ.App.1956); *Joslyn v. Professional Realty*, 622 P.2d 1369, 1373–1374 (Wyo.1981).

■ We hold, therefore, that Mrs. Carroll's claim, that the value of her right to possession of her federally subsidized townhouse exceeds $500, entitles her to a jury trial unless it appears to a legal certainty that the amount in controversy does not exceed $500.

### III.

In the instant case, it does not clearly appear that the amount in controversy fails to exceed $500. In fact, it seems clear that Mrs. Carroll's claim does exceed $500.

---

**2.** The requirement of good faith is sometimes stated as something in addition to the legal certainty test. Nonetheless, as the language in *Horton* indicates, "good faith and legal certainty are equivalents rather than two separate tests." *Jones v. Landry*, 387 F.2d 102, 104 (5th Cir.1967).

Professor Wright has said, C. Wright, *Law of Federal Courts* § 33 at 184 (4th ed. 1983):

"[U]nless it appears to a legal certainty that plaintiff cannot recover the sum for which he prays, how can it be held that his claim for that sum is not in good faith?

\*      \*      \*      \*      \*      \*

"Conversely plaintiff's good faith will not save him if it does appear to a legal certainty that he cannot recover the requisite amount." *Id.* at 184 n. 18.

In the circuit court, counsel for the Commission argued that the value to Mrs. Carroll of the right to possession of her federally subsidized townhouse is $76, because "[t]hat is how much she pays." We disagree.

■ Under the circumstances of this case, in determining the value to the tenant of remaining in possession, one must consider not simply the monthly rental Mrs. Carroll is paying for her federally subsidized townhouse but the fair market rent for comparable housing in the area. Moreover, the time period for which the tenant has a right to continued possession must be taken into account. While the lease states that the tenancy is month to month, under applicable regulations and case law, Mrs. Carroll has a right to remain in her townhouse indefinitely until the Commission can establish good cause for eviction. Accordingly, the value of this potential flow of future federal rent subsidies is a critical factor.

In oral argument before the circuit court, Mrs. Carroll's attorney estimated that the fair market rent for comparable housing in Montgomery County was "certainly ... $400 or $450 a month." With her motion for reconsideration, Mrs. Carroll submitted portions of the Federal Register in which the federal Department of Housing and Urban Development published standards for calculating "Fair Market Rent" and tables of fair market rents for various areas.[3] The "Fair Market Rent" listed in those tables for a two bedroom unit in the Washington Metropolitan Statistical Area (which in-

---

**3.** The Department of Housing and Urban Development calculates "Fair Market Rents" for use in implementing a housing program under Section 8 of the United States Housing Act of 1937, 42 U.S.C. § 1437f. To determine the "Fair Market Rent" for a particular geographic area, the agency calculates the rent below which 45 percent of the standard quality housing units in the area are distributed. *See* 48 Fed.Reg. 43578–43587 (September 23, 1983).

cludes Montgomery County) for the period from September 1983 to September 1984 was $414.[4]

Federal regulations mandate that governmental housing authorities which receive federal subsidies "shall not terminate or refuse to renew the lease other than for serious or repeated violation of material terms of the lease ... or for other good cause." 24 C.F.R. § 966.4(1)(1). Furthermore, numerous cases have held that tenants of federally funded housing projects have a right or entitlement to continued occupancy and may not be evicted without good cause. *See, e.g., Green v. Copperstone, Ltd.,* 28 Md.App. 498, 346 A.2d 686 (1975); *Jeffries v. Georgia Residential Finance Authority,* 678 F.2d 919, 925–927 (11th Cir.1982); *Lopez v. Henry Phipps Plaza South, Inc.,* 498 F.2d 937 (2d Cir. 1974); *Joy v. Daniels,* 479 F.2d 1236 (4th Cir.1973); *Anderson v. Denny,* 365 F.Supp. 1254 (W.D.Va.1973); *McQueen v. Druker,* 317 F.Supp. 1122 (D.Mass.1970), *aff'd. on other grounds,* 438 F.2d 781 (1st Cir.1971); *Appel v. Beyer,* 39 Cal.App.3d.Supp. 7, 114 Cal.Rptr. 336 (1974); *Nash v. Washington,* 360 A.2d 510 (D.C.Ct.App.1976); *Hudson Terrace, Inc. v. Maury,* 100 Misc.2d 331, 419 N.Y.S.2d 409 (1979); *Apartments, Inc. v. Williams,* 43 N.C.App. 648, 260 S.E.2d 146 (1979); Note, *Procedural Due Process in Government-Subsidized Housing,* 86 Harv.L.Rev. 880 (1973).

In *Joy v. Daniels, supra,* the plaintiff paid rent of $48 per month for an apartment worth $157 per month. The court noted that "if plaintiff's life expectancy is as much as a decade (or less) the 'bargain' value of her lease would seem to have a value greater than $10,000." 479 F.2d at 1239 n. 6. In *Anderson v. Denny, supra,* 365 F.Supp. at 1259, the court held that the value of continued possession of federally subsidized housing is sufficient to satisfy the $10,000 jurisdictional amount for federal question jurisdiction under 28 U.S.C. § 1331, saying:

---

**4.** It was stated in an affidavit that the "Fair Market Rent" for a two bedroom unit in Montgomery County was raised to $497, because the Commission established that rental costs in Montgomery County exceeded the published limit.

"Mrs. Long, her husband and two children pay a monthly rental of only $99.00 for their apartment at Oak Ridge Gardens. There is obviously a certain value at stake in this lease which would be lost if plaintiff were evicted. The amount of such loss would exceed $10,000 over the life of Mrs. Long, who is presently only 21 years of age. Additional costs such as moving and storage expenses are also at stake."

*See Bloodworth v. Oxford Village Townhouses, Inc.,* 377 F.Supp. 709, 714 (N.D.Ga.1974); *Mandina v. Lynn,* 357 F.Supp. 269, 276 (W.D.Mo.1973); Note, *Due Process on Eviction,* 36 Md.L.Rev. 255, 268 (1976).

■ In the above cases, courts have computed the value of the right to occupy federally subsidized housing over the tenant's remaining life span, or at least over a period of years. There can be no doubt that, in the present case, the value of Mrs. Carroll's right to possession exceeds $500. The circuit court erred in deciding that Mrs. Carroll is not entitled to a jury trial.

JUDGMENT OF THE CIRCUIT COURT FOR MONTGOMERY COUNTY REVERSED, AND CASE REMANDED TO THAT COURT FOR A JURY TRIAL. COSTS TO BE PAID BY THE RESPONDENT.