38 A.3d 478

Theodore I. SANDLER, et al.

v.

EXECUTIVE MANAGEMENT PLUS.

Nos. 0732, 0752, Sept. Term, 2010.

Court of Special Appeals of Maryland.

March 1, 2012.

400

Theodore I. Sandler, Rockville, MD, for appellant.

Richard S. Basile (Robert E. Ammons, PA, on the brief), Greenbelt, MD, for appellee.

Panel: ZARNOCH, HOTTEN, J. FREDERICK SHARER (Retired, Specially Assigned), JJ.

HOTTEN, J.

Appellants, Theodore I. Sandler and Abbie L. Fields, appeal from the judgments of the Circuit Court for Montgomery County entered in favor of appellee, Executive Management Plus, in these consolidated landlord-tenant actions.[1] Appellants raise two issues, which we have combined and recast as a single issue:

Whether the circuit court erred by striking appellants' jury trial demand.

For the reasons that follow, we shall affirm.[2]

---

[1]. Appellants are proceeding without the assistance of counsel. In their opening brief, appellants present the following issues, which we quote:

 I. The Circuit Court erred when it denied tenant a jury trial.

 II. The Circuit Court denied tenant due process under the law.

Appellants also filed a reply brief, presenting the following argument:

 I. Tenant had a lease.

 II. The jury trial should be restored.

 A. Dispute of the court's order was legally justified.

 B. Use of the court's complaint form should be upheld.

 III. Tenant was denied their [sic] constitutional rights.

[2]. The issue appellants raise in their reply brief would normally not be before us because it is long-established that "[a]n appellate court will

## BACKGROUND

On August 26, 2008, the parties entered into a one year residential lease for a single family home located at 12008 Titian Way in Potomac, Maryland. The lease contained a renewal clause. According to appellants, a "dispute arose" between the parties regarding whether appellants properly exercised the renewal clause to extend the lease for another year. Appellee, however, asserted that appellants modified the original lease, creating a counter-offer for the renewal term, which appellee did not accept.

On September 29, 2009, appellee served appellants with a "Notice to Vacate." On November 4, 2009, in the District Court of Maryland for Montgomery County, appellee filed a "Complaint and Summons against Tenant Holding Over" ("THO"), seeking possession of the property.[3] *See* Md.Code (1974, 2003 Repl.Vol., 2009 Supp.), § 8–402 of the Real Property Article ("R.P."). On November 6, 2009, in the District Court, appellants filed a "Petition in Action of Rent Escrow [and] for Injunction." Appellants' claim under the 1975 Rent Escrow Act alleged the presence of certain "conditions and defects in the leased premises," including "mold, flaking paint, Building Code violations, [and] Environmental Dept. violations." Appellants sought an "[i]njunction against harrassment [sic]" and damages "for breach of the covenant of quiet enjoyment or warranty of habitability in the amount of $3[,]744 × 4 Mos. Rent." *See* R.P. § 8–211. *See generally Neal v. Fisher*, 312 Md. 685, 541 A.2d 1314 (1988) (discussing Rent Escrow Act).

---

not ordinarily consider an issue raised for the first time in a reply brief." *Robinson v. State,* 404 Md. 208, 215 n. 3, 946 A.2d 456 (2008) (citations omitted). Nevertheless, appellants' challenge is an apparent response to appellee's claim, raised in its response brief, that any error in the circuit court's sanction of striking the jury trial demands was harmless.

**3.** The same complaint was later filed in the circuit court on December 22, 2009.

The rent escrow case came before the District Court on December 9, 2009. Because the THO case had not been called, the District Court continued both cases to December 16, 2009. In the meantime, as we shall note below, one of the appellants asked about moving for a jury trial. On that same date, apparently after the hearing, appellant Sandler filed a written jury trial request. On December 16, 2009, the District Court sent both cases to the circuit court for jury trials.

On February 22, 2010, appellants moved to consolidate both cases, and the circuit court granted the motion on March 10, 2010, with the clerk entering the order the next day. On March 24, 2010, the consolidated cases went before another circuit court judge for a hearing on several motions and for trial. The court reversed the consolidation order and granted appellee's motion to strike the jury trial demand.

The cases each went to trial before yet another circuit court judge on May 12 and 13, 2010. In each case, the court granted appellee's motions for directed verdicts, which were essentially motions for judgment.[4] *See* Md. Rule 2–519. Appellants timely appealed both decisions, and we consolidated the appeals for our consideration.

We shall recite additional facts as they relate to the issues before us.

## DISCUSSION

### I. Introduction

The right to a jury trial in Maryland is afforded by Articles 5 and 23 of the Maryland Declaration of Rights.[5] *See Pickett*

---

4. We note in passing that the parties filed numerous motions in each case, including motions for summary judgment, for an Order for Lis Pendens, and to amend the pleadings. The dispositions of these various motions are not before us.

5. At the time these cases were commenced, Article 23 of the Maryland Declaration of Rights provided:

*v. Sears Roebuck & Company*, 365 Md. 67, 89, 775 A.2d 1218 (2001). This Constitutional mandate is implemented by Md. Code (1974, 2006 Repl.Vol., 2009 Supp.), § 4–402(e) of the Courts and Judicial Proceedings Article ("C.J.")[6] and Maryland Rule 3–325, which sets forth procedural requirements for a jury trial demand.

On appeal, appellants claim that the circuit court erred by denying their right to a jury trial. They assert that the court's failure to recognize their proper jury plea from December 9, 2009 was made more difficult by notational errors in the record. They further contend that "[c]umbersome, overlapping files and an effective campaign of disinformation created significant confusion during the proceedings[, and that the] flawed assumptions of fact, adopted by the Court fatally affected the proceedings in this case." They take issue with the view that these cases involved purely equitable claims that would not warrant a trial by jury, and also complain that they were denied due process of law because the record below "was conflicted and in error." They further maintain that "[n]otational, procedural and factual errors" combined to limit their right to be heard and to defend their right to their home. Specifically, they rely on the circuit court's acceptance of an incorrect jury plea date as an error which, above all others, had a fatal effect on this case and was "an incorrect and prejudicial assumption." Appellants believe that they continue to have an interest in the "implied value of their lease" and a legal claim flowing from appellee's actions.

---

The right of trial by Jury of all issues of fact in civil proceedings in the several Courts of Law in this State, where the amount in controversy exceeds the sum of $ 10,000, shall be inviolably preserved. The jurisdictional amount has since been increased to $15,000. *See* 2010 Laws of Maryland Chap. 480.

6. At the time these cases were commenced, C.J. § 4–402(e)(1) provided:

In a civil action in which the amount in controversy exceeds $10,000, exclusive of attorney's fees if attorney's fees are recoverable by law or contract, a party may demand a jury trial pursuant to the Maryland Rules.

Appellee responds that the actions *sub judice* are solely equitable in nature and, as a result, appellants are not entitled to a jury trial. Appellee further contends that the circuit court properly denied a jury trial for two reasons: (1) appellants' failure to make a timely written demand for a jury trial and (2) the instant cases only seek equitable relief. Appellee also maintains that, assuming that appellants have a right to a jury trial in this case, the denial of a jury trial is harmless error because appellee moved for directed verdicts in both cases, which the circuit court granted. As such, the court's rulings in appellee's favor on questions of law would have taken these cases from the jury in any event.

We agree with appellee that any error in striking appellants' jury trial demands was harmless. Accordingly, we shall affirm the judgments of the circuit court. To place this holding in context, we address the contention that the cases before us are solely equitable and do not warrant a trial by jury, then addressing the timeliness of appellants' jury trial demands. As discussed *infra*, we conclude that the actions before us are not limited to claims for equitable relief and that appellants would have been entitled to a jury trial in each case provided they alleged a sufficient amount in controversy and fulfilled other prerequisites for demanding a jury trial. We will not address appellee's contention that appellants failed to comply with the order that they make payments to appellee pursuant to R.P. § 8–118 because it appears that appellants tendered rent payments to the circuit court.

## II. Suit for Possession as Action at Law–Amount in Controversy

■ Appellee contends that both actions are equitable in nature and, thus, do not warrant a trial by jury. With respect to the THO action, appellee insists that it merely seeks possession of the property it owns. We disagree with appellee that a litigant in a tenant holding over action would *never* be entitled to a trial by jury. In an appropriate case, where a tenant asserts a right to continue possession in defense of a landlord's action seeking possession, and where the tenant also

makes a claim for damages that he or she might suffer as a result of an ejectment or ouster, the tenant would be entitled to a jury trial provided that the alleged damages exceeded the required amount in controversy.

The Court of Appeals' decision in *Martin v. Howard County*, 349 Md. 469, 709 A.2d 125 (1998), is instructive. In that case, Howard County filed an action to "abate" a nuisance pursuant to R.P. § 14–120, which, at the time, created a cause of action to "abate" a nuisance when one's use of real property involved controlled dangerous substances or paraphernalia. *Id.* at 471–72, 709 A.2d 125. The tenant requested a jury trial, and the case was transferred to the circuit court. *Id.* at 475–76, 709 A.2d 125. The circuit court struck an earlier order allowing a jury trial and remanded to the District Court because the court agreed with the county that the action sounded in equity as the county sought only injunctive relief. *Id.* at 476, 709 A.2d 125.

The Court of Appeals disagreed that the county's possession action was solely equitable in nature, and instead concluded that

[a]n action by or on behalf of a landlord to evict a tenant, on the ground that the tenant no longer is entitled to possession, and to restore possession to the landlord, "is historically an action at law to which the right to a jury trial has always attached in this State." . . . It is a form of the traditional legal action of ejectment. . . . Since ejectment, as well as trespass out of which the action of ejectment grew, are actions at law, the constitutional right to a jury trial attaches.

*Id.* at 481–83, 709 A.2d 125 (citations omitted). Although the trial court action had been styled a "Complaint for Injunctive Relief," the actual relief sought by the county was, in fact, legal in nature. *Id.* at 476, 709 A.2d 125. The Court of Appeals distinguished actions seeking to halt certain activities on the property, instead pointing out that the nature of the remedy dictates whether the action is one at law or in equity:

With respect to actions against defendants who are allegedly engaging in activity constituting a nuisance, the relief sought will determine the nature of the action. If the relief requested is an order requiring the defendant to stop engaging in the activity, the action is equitable. If the plaintiff requests money damages, or if a plaintiff not in possession requests an order ousting a tenant from possession of the property, the actions are legal, and there is a constitutional right to a jury trial.

*Id.* at 489, 709 A.2d 125.

The gravamen of appellee's "Complaint and Summons against Tenant Holding Over" is that appellee "desir[ed] to gain possession of the premises[.]" This is a claim at law. Our inquiry does not end with the characterization of appellee's suit for possession as a legal claim. For a party to be entitled to a jury trial, the action must involve an amount in controversy that exceeds $10,000, the threshold jurisdictional amount in effect at the time the claim was filed. *See* C.J. § 4-402(e)(1).[7]

In *Carroll v. Housing Opportunities Commission,* 306 Md. 515, 517, 510 A.2d 540 (1986), the Court of Appeals addressed the issue of whether a tenant, Ms. Carroll, had a right to a jury trial in an action brought by a public housing authority to recover possession of a rental unit. Ms. Carroll paid $76 per month as a portion of her rent, with the remainder of the rent subsidized by the United States Department of Housing and Urban Development. *Id.* at 517, 510 A.2d 540. Following an altercation between a guest of Ms. Carroll and another person, the Montgomery County Housing Opportunities Commission decided that Ms. Carroll had violated the terms of her lease by failing to control her guest. *Id.* at 517–18, 510 A.2d 540. Ms.

---

7. The Legislature has increased the jurisdictional threshold to $15,000. *See* 2010 Laws of Maryland, Chap. 225 (effective December 1, 2010). *See also* Article 23 of the Maryland Declaration of Rights, which provides: "The right of trial by Jury of all issues of fact in civil proceedings in the several Courts of Law in this State, where the amount in controversy exceeds the sum of $ 15,000, shall be inviolably preserved."

Carroll refused to vacate the apartment, and the Housing Opportunities Commission instituted a tenant holding over action in the District Court. *Id.* at 518, 510 A.2d 540. Ms. Carroll filed a timely demand for a jury trial, claiming that the value of the continued possession of her townhouse exceeded the then-jurisdictional amount of $500. *Id.* at 518, 510 A.2d 540. As a result, the case was transferred to the circuit court. *Id.* On the day of trial, the court questioned Ms. Carroll's entitlement to a jury trial, ruled that she had failed to establish the requisite amount in controversy, and remanded the case to the District Court for a bench trial. *Id.* at 519, 510 A.2d 540. Although Ms. Carroll documented the fair market value of her townhouse, the circuit court denied her motion for reconsideration, and Ms. Carroll appealed. *Id.*

The Court of Appeals held that nature of the action triggered Ms. Carroll's right to a jury trial, provided that the jurisdictional amount was met. *Id.* at 521, 510 A.2d 540. The Court pointed out that it had ruled in

> *Bringe v. Collins* [274 Md. 338,] 346–347 [335 A.2d 670], [*application for stay denied,* 421 U.S. 983, 95 S.Ct. 1986, 44 L.Ed.2d 475 (1975)], that "an action ... by a landlord to recover possession of his premises, is historically an action at law to which the right to a jury trial has always attached in this State." The Court [in *Bringe* ] further explained that "[f]or a party in a landlord-tenant action to be entitled to a jury trial, there must either be a claim for money damages over $500.00 [the jurisdictional amount at that time] or a claim that the value of the right to possession exceeds $500.00."

*Id.* The Court added that Ms. Carroll's "claim that the amount in controversy exceeds [the jurisdictional amount] establishes the claimant's right to a jury trial unless it clearly appears that the claim is actually for less than that amount." *Id.* at 522, 510 A.2d 540. The Court concluded that "[t]aken together, *Bringe* and *Purvis* [*v. Forrest Street Apts.,* 286 Md. 398, 408 A.2d 388 (1979)] establish that the claims of the parties, for money damages or for the right to possession, determine the amount in controversy." *Id.* at 523, 510 A.2d 540. Refer-

ring to federal cases that address the "amount in controversy" in questions of federal jurisdiction, the Carroll Court quoted the following with approval:

The general federal rule has long been to decide what the amount in controversy is from the complaint itself, unless it appears or is in some way shown that the amount stated in the complaint is not claimed "in good faith." In deciding this question of good faith we have said that "it must appear to a legal certainty that the claim is really less than the jurisdictional amount to justify dismissal."

*Carroll,* 306 Md. at 523–24, 510 A.2d 540 (quoting *Horton v. Liberty Mut. Ins. Co.,* 367 U.S. 348, 353, 81 S.Ct. 1570, 6 L.Ed.2d 890 (1961) (further citation omitted)). The Court of Appeals then ruled as follows:

We hold, therefore, that Mrs. Carroll's claim, that the value of her right to possession of her federally subsidized townhouse exceeds $ 500, entitles her to a jury trial unless it appears to a legal certainty that the amount in controversy does not exceed $ 500.

*Id.* at 524, 510 A.2d 540. The Court then elaborated:

Under the circumstances of this case, in determining the value to the tenant of remaining in possession, one must consider not simply the monthly rental Mrs. Carroll is paying for her federally subsidized townhouse but the fair market rent for comparable housing in the area. Moreover, the time period for which the tenant has a right to continued possession must be taken into account. While the lease states that the tenancy is month to month, under applicable regulations and case law, Mrs. Carroll has a right to remain in her townhouse indefinitely until the Commission can establish good cause for eviction. Accordingly, the value of this potential flow of future federal rent subsidies is a critical factor.

In oral argument before the circuit court, Mrs. Carroll's attorney estimated that the fair market rent for comparable housing in Montgomery County was "certainly . . . $ 400 or $ 450 a month." With her motion for reconsideration, Mrs.

Carroll submitted portions of the Federal Register in which the federal Department of Housing and Urban Development published standards for calculating "Fair Market Rent" and tables of fair market rents for various areas. The "Fair Market Rent" listed in those tables for a two bedroom unit in the Washington Metropolitan Statistical Area (which includes Montgomery County) for the period from September 1983 to September 1984 was $ 414.

*Id.* at 525–26, 510 A.2d 540 (footnote omitted).

In *Purvis v. Forrest Street Apartments,* 286 Md. 398, 408 A.2d 388 (1979), the Court of Appeals discussed the issue of whether a party had demonstrated the requisite amount in controversy—then $500. The Court stated that the "value of the right to possession of the premises, if it can be ascertained, should be considered along with the plaintiff's initial monetary demand[.]" *Purvis,* 286 Md. at 403, 408 A.2d 388.

We note that R.P. § 8–601 states that "[a]ny party to an action brought in the District Court under this title in which the amount in controversy meets the requirements for a trial by jury may, in accordance with this subtitle, demand a trial by jury." Moreover, R.P. § 8–118(a) provides that "[i]n an action under § 8–401 [Failure to pay rent], § 8–402 [Holding Over], or § 8–402.1 [Breach of Lease] of this title in which a party demands a jury trial, the District Court immediately shall enter an order directing the tenant or anyone holding under the tenant to pay all rents as they come due during the pendency of the action" into a rent escrow account. Therefore, the Real Property Article provides a tenant with the ability to request a jury trial in a THO matter. Simply, as the Court of Appeals stated in *Martin,* 349 Md. at 489, 709 A.2d 125, "[i]f the plaintiff requests money damages, or if a plaintiff not in possession requests an order ousting a tenant from possession of the property, the actions are legal, and there is a constitutional right to a jury trial." *See also Mulchansingh v. Columbia Mgmt., Inc.,* 33 Md.App. 304, 309, 364 A.2d 78 (1976) (quoting *Bringe,* 274 Md. at 347, 335 A.2d 670) ("For a party in a landlord-tenant action to be entitled to a jury trial, there must either be a claim for money damages over [the

jurisdictional amount] or a claim that the value of the right to possession exceeds [the jurisdictional amount].")

In the THO action before us, appellants' written demand for a jury trial, dated December 9, 2009, does not reference an amount. *See Carroll,* 306 Md. at 518, 510 A.2d 540 (tenant's demand for jury trial claimed amount in controversy in excess of $500). It is not clear whether appellants otherwise substantiated their assertion that an amount in controversy exceeded $10,000, and appellants do not assert on appeal that they have demonstrated an amount in controversy in the THO case. Nevertheless, the amount in controversy may " 'otherwise be ascertained,' " inasmuch as appellants sought the continuation of their possession under a renewed lease for one year. *See Purvis,* 286 Md. at 403, 408 A.2d 388 (quoting *Agnew v. Dorman,* 1 Fed.Cas. 211, 212 (Fed. Case No. 100) (C.C.Md. 1838))

Federal decisions addressing a party's burden of demonstrating an "amount in controversy" are instructive. In *Pollokoff v. Maryland National Bank,* 288 Md. 485, 491, 418 A.2d 1201 (1980), the Court of Appeals stated that "[w]hen we expand beyond our decisions in a search for guidance in the application of 'amount in controversy' to the facts presented . . . we look to the federal cases." *Cf. Higgins v. Barnes,* 310 Md. 532, 543, 530 A.2d 724 (1987) (recognizing that "Maryland courts have traditionally relied on federal courts' interpretations of analogous rules as persuasive authority"); *accord McDermott v. BB & T Bankcard Corp.,* 185 Md.App. 156, 167, 968 A.2d 1096 (2009). For example, in *Lewis v. Verizon Communications, Inc.,* 627 F.3d 395, 397 (9th Cir.2010), the court stated that "when the complaint does not contain any specific amount of damages sought, the party seeking removal under diversity [or a jury trial in the circuit court as in the case *sub judice* ] bears the burden of showing, by a preponderance of evidence, that the amount in controversy exceeds the statutory amount." With respect to the THO action, we conclude that at the commencement of the THO action, appellants' claim of entitlement to continued possession under a lease, the terms of which included more than three monthly

rent payments in excess of $3,700, demonstrated an "amount in controversy" to justify a trial by jury.[8] *See Purvis,* 286 Md. at 403–04, 408 A.2d 388.

### III. Rent Escrow Action—Damages Claims

■ In regard to appellants' complaint for damages for breach of the covenant of quiet enjoyment and warranty of habitability in the rent escrow action, we conclude that appellants would have been entitled to a jury trial. Assuming that the jury demand was timely made, we disagree with appellees and the circuit court judge who struck the jury trial demand on the basis that appellants were not entitled to allege entitlement to damages for "breach of the covenant of quiet enjoyment or warranty of habitability[.]"

The purpose of the rent escrow provision of the Real Property Article is set forth in R.P. § 8–211(a), which reads:

(a) The purpose of this section is to provide tenants with a mechanism for encouraging the repair of serious and dangerous defects which exist within or as part of any residential dwelling unit, or upon the property used in common of which the dwelling unit forms a part. The defects sought to be reached by this section are those which present a substantial and serious threat of danger to the life, health and safety of the occupants of the dwelling unit, and not those which merely impair the aesthetic value of the premises, or which are, in those locations governed by such codes, housing code violations of a nondangerous nature. The intent of this section is not to provide a remedy for dangerous conditions in the community at large which exists apart from the leased premises or the property in common of which the leased premises forms a part.

As noted, appellants' complaint not only sought an injunction for the correction of "conditions and defects on the leased

---

**8.** Appellants contended that the lease entitled them to reside in the residence for the remaining year term, and just three months of rental payments in the amount of $3,700 would have exceed the jurisdictional amount at the time of $10,000.

premises," but also claimed "damages ... for breach of the covenant of quiet enjoyment or warranty of habitability[.]" In their reply brief, appellants complain that the circuit court erred by "disput[ing] the validity of Tenants' claims because of the form proffered by the [District] [C]ourt." Indeed, during the hearing on the motion to strike the jury demand, the motions court essentially disregarded appellants' damages claim. The motions court explained that appellants' rent escrow claim was solely based in equity by stating, in essence, that such damages claims were not cognizable under R.P. § 8–211. The court stated its view that the District Court form pleading was wrong, elaborating that the rent escrow claim was "intended to provide equitable relief ... and there is nothing in the statute that provides for a private cause of damages in terms of its relief." The court went on to pronounce that "the statute will always trump a form." The motions court erred in its conclusion.

This Court has pointed out that

[i]n Maryland, generally, in the absence of an actual or constructive eviction, a tenant will have a claim for damages caused by conduct by the landlord that strikes at the essence of its obligations under the lease. . . . Thus, there may be a breach of the covenant of quiet enjoyment even when the tenant remains in possession of the premises. . . . The scope or magnitude of the interference necessary to constitute a breach of the covenant of quiet enjoyment must be such as goes to the essence of what the landlord is to provide. . . . If that is proven, a breach of the covenant of quiet enjoyment will be established and the tenant may recover damages incurred by the breach, *i.e.*, the difference in value between what the tenant in fact received and what he would have received, absent the breach.

*Nationwide Mut. Ins. Co. v. Regency Furniture, Inc.*, 183 Md.App. 710, 734, 963 A.2d 253 (2009) (citations omitted). The Court of Appeals has noted that " 'the thrust of the State's rent escrow statute is to provide tenants with additional judicial remedies in support of a limited, implied warrant of

habitability[.]' " *Pak v. Hoang,* 378 Md. 315, 327 n. 4, 835 A.2d 1185 (2003) (quoting 62 Op. Att'y Gen. 523 (Md.1977)).

The District Court pleading forms are consistent with the Real Property Article, and the circuit court erred in stating otherwise. The Court of Appeals has observed:

> Maryland Rule 3–303(a) requires that, "as far as practicable, all pleadings [filed in the District Court] shall be prepared on District Court forms prescribed by the Chief Judge of the District Court." Rule 3–303(c) permits a plaintiff to state as many separate claims as the party has, regardless of consistency, and section (e) of the rule provides that all pleadings shall be so construed as to do substantial justice. As noted, petitioner's claim was filed on the pre-printed District Court form, which expressly allows an action for breach of warranty of habitability or quiet enjoyment to be joined with a rent escrow action. That suggests, as strongly as anything could, that the District Court does not regard warranty of habitability or quiet enjoyment claims as having to be filed separately from other landlord-tenant actions.

*Williams v. Housing Auth.,* 361 Md. 143, 159, 760 A.2d 697 (2000).[9]

In *Mattingly v. Mattingly,* 92 Md.App. 248, 256, 607 A.2d 575 (1992) (citations omitted), we stated that "if a case presents any legal issues, even if those issues are outweighed by equitable issues, the case is to be tried to a jury unless 'the use of the jury trial itself will in some way obstruct a satisfactory disposition of the equitable claim.'" We believe that, provided that other jurisdictional prerequisites were

---

9. While we agree with appellants that the circuit court order striking the jury trial demand was incorrect to the extent the court viewed their complaint as dictating purely equitable relief, especially in view of the circuit court's error in recognizing that the District Court form was consistent with the statute, our review of the trial transcripts does not lead us to believe that the trial judge (a different circuit court judge) ignored allegations of defects or unhealthy conditions in the property. In short, we believe that the court's ruling on appellee's motions for directed verdicts addressed all of the issues relating to defects and conditions at the property.

satisfied and that appellants timely requested a jury trial, appellants would have been entitled to a jury trial on the basis of their claim for damages, even if their complaint also asserted a claim for equitable relief. *See generally Higgins v. Barnes,* 310 Md. 532, 547, 530 A.2d 724 (1987). Appellants alleged damages in excess of $10,000, the jurisdictional amount in controversy at the time, in damages relating to the breach of the covenant of quiet enjoyment and the warranty of habitability in their rent escrow action.

We note that R.P. § 8–211 sets forth the procedure a District Court shall follow in its consideration of a pure rent escrow claim. Additionally, C.J. § 4–401(7)(i) provides that "the District Court has exclusive original civil jurisdiction in ... a petition of injunction filed by ... [a] tenant in an action under § 8–211 of the Real Property Article or a local rent escrow law." Therefore, it is clear that if appellants' claim was based solely on a rent escrow claim, they would not have had a right to a jury trial. However, because appellants also alleged damages in excess of the jurisdictional amount based on the breach of the covenant of quiet enjoyment and the warranty of habitability, they triggered their right to a jury trial.

As discussed below, any error in dismissing appellant's jury trial request was harmless.

## IV. Timeliness

The parties first appeared in the District Court on December 9, 2009, in regard to the rent escrow case. The THO action had been continued until the following week, December 16, 2009. After some discussion, the District Court noted that "[t]hese cases are intertwined.... If one case is next week, which it is, then the other case will be with it next week on the 16th." At this first hearing, an individual also raised the issue of requesting a jury trial: [10]

---

**10.** Although the transcript does not identify this individual, and appellee makes much of this, it is clear from the context of the proceedings

UNIDENTIFIED MALE SPEAKER NO. 2: Since all the parties are present, would it be appropriate to make a motion to request a jury trial?

THE COURT: For which case?

UNIDENTIFIED MALE SPEAKER NO. 2: Well, since they're going to be heard simultaneously, let's do it for both cases if they're going to be consolidated.

THE COURT: They're not consolidated.

UNIDENTIFIED MALE SPEAKER NO. 2: Or—

THE COURT: They're just two cases. Well, first of all—

UNIDENTIFIED MALE SPEAKER NO. 1: There's no claim for monetary damages here.

THE COURT: Wait, wait, wait, wait. First of all, 31607 is not before me.

UNIDENTIFIED MALE SPEAKER NO. 1: Yes. Okay.

THE COURT: It's continued until next week. And 32009 would be—

UNIDENTIFIED MALE SPEAKER NO. 2: In excess of $10,000.

THE COURT:—in excess of $10,000. So, I suppose that you can request a jury trial, 32009, which is the rent escrow.

UNIDENTIFIED MALE SPEAKER NO. 1: No, I mean the rules require that any request be made in writing, which he has obviously failed to do.

THE COURT: Well, when a jury is prayed in writing, then we'll forward it to the Circuit Court.

UNIDENTIFIED MALE SPEAKER NO. 2: When would that be due, Your Honor?

THE COURT: At whatever time the rules allow you to make a demand for a jury trial. Typically, if it's a plaintiff, it's done at the time the complaint is filed, but the rules give you some latitude.

---

that "Unidentified Male Speaker No. 2" is Mr. Sandler, one of the appellants before us.

UNIDENTIFIED MALE SPEAKER NO. 2: Thank you, Your Honor.

UNIDENTIFIED MALE SPEAKER NO. 1: Well, Your Honor, we can proceed with our rent escrow case—I mean with our THO case, right?

THE COURT: Right

UNIDENTIFIED MALE SPEAKER NO. 1: Okay. We'll go forward with the THO.

THE COURT: Well, not today, but—

\* \* \*

THE COURT: . . . [W]e'll be back next week for the THO. And, at this time, I'm going to continue having this case set next week, but if you demand a jury trial, then, obviously, we'll do something differently then.

It is evident that, at the hearing on December 9, 2009, one appellant asked whether it would be appropriate to request a jury trial. The record extract also contains a written request for a jury trial dated December 9, 2009. This request had not been offered into the record at the time of the hearing on that date because "Unidentified Male Speaker No. 1," who we believe is obviously counsel for appellee, pointed out appellants' failure to comply with the requirement that a jury trial request be made in writing. Therefore, we presume that the written jury request was filed after the hearing and served on appellee on December 10, 2009. We note, however, that the District Court judge represented that, while a demand would usually accompany a complaint, the "rules give you some latitude." Appellants clearly acted on the District Court's representation by filing the written jury trial demand that same day.

When the parties next appeared before the District Court on December 16, 2009, the District Court transferred the case to the circuit court based on appellants' demands for jury trials. While there appeared to considerable uncertainty as to what had been raised in the prior hearing and how the District Court judge on December 9, 2009, had ruled, the court on the

December 16, 2009, transferred both cases to the circuit court, stating as follows:

> All right. Given that [a] jury demand is really jurisdictional, I'm going to send it to Circuit Court. You're free to raise the issue in front of Judge Mitchell on a motion for reconsideration if you wish. If she's made a prior ruling, certainly they can vacate my ruling and—
>
> * * *
>
> [B]oth of these cases are going to Circuit Court for a jury trial.

Appellants' jury trial requests were treated by the District Court as timely, and that court accordingly transferred the cases to the circuit court. The District Court appeared to base its actions solely on the fact that appellants had demanded a jury trial. Certainly, the "demand itself divests the District Court of jurisdiction as a matter of law and immediately vests jurisdiction in the circuit court." *Pickett,* 365 Md. at 91, 775 A.2d 1218 (citation and internal quotation marks omitted). Yet, the District Court in the first instance could have examined more carefully whether appellants' jury trial demands in each case were timely.

"Maryland Rule 3–325 sets forth the procedure for requesting a jury trial, requiring the parties to file a separate written demand for a jury trial and providing the time requirements for the demand." *McDermott,* 185 Md.App. at 165, 968 A.2d 1096. "A timely demand for a jury trial pursuant to Rule 3–325 vests jurisdiction in the circuit court when the amount in controversy exceeds $ 10,000." *Id.* At the time these actions were commenced, Maryland Rule 3–325 provided:

**Rule 3–325. Jury trial.**

**(a) Demand—Time for filing.**

(1) By plaintiff. A plaintiff whose claim is within the exclusive jurisdiction of the District Court may elect a trial by jury of any action triable of right by a jury by filing with the complaint a separate written demand therefor.

(2) By defendant. A defendant, counter-defendant, cross-defendant, or third-party defendant may elect a trial by jury of any action triable of right by a jury by filing a separate written demand therefor within ten days after the time for filing a notice of intention to defend.

(b) Waiver. The failure of a party to file the demand as provided in section (a) of this Rule constitutes a waiver of trial by jury of the action for all purposes, including trial on appeal.

(c) Transmittal of record to circuit court. When a timely demand for jury trial is filed, the clerk shall transmit the record to the circuit court within 15 days. At any time before the record is transmitted pursuant to this section, the District Court may determine, on motion or on its own initiative, that the demand for jury trial was not timely filed or that the action is not triable of right by a jury.

Similarly, R.P. § 8–602 provides that the party demanding a jury trial file the demand in a separate pleading.[11] R.P. § 8–602(a) further provides that failure to comply may be treated as a waiver of the jury trial demand. Nevertheless, R.P. § 8–602(b) permits a plaintiff in a residential case to file the jury trial demand at the parties' first scheduled appearance.

 We conclude that appellants' demand for a jury trial in the rent escrow action was timely.[12] The written jury trial

---

**11.** R.P. § 8–602, in relevant part, provides:

(a) A jury demand must be made by a separate written pleading. Except as provided in subsection (b) of this section, a jury demand under this subsection shall be filed with the court as provided in item ... (2) of this subsection or the right to trial by jury is waived:

\* \* \*

(2) In residential cases, at the parties' first scheduled appearance before the court.

**12.** Md. Rule 3–325(c) provides that "[w]hen a timely demand for jury trial is filed, the clerk shall transmit the record to the circuit court within 15 days." The Rule further provides that the "District Court may determine ... that the demand for jury trial was not timely filed[.]" It appears that appellants paid money into a court escrow. Following the circuit court's entry of judgment, or directed verdict, in favor of appellee, appellee's counsel sought a ruling from the court on

demand for both cases was lodged, at the earliest, on December 9, 2009, but appellants' rent escrow action was filed on November 6, 2009. Although the written demand was clearly filed after the hearing on December 9, 2009, the District Court judge at that hearing represented that the rules offer some "latitude." We conclude that, on this record, appellants' rent escrow jury demand was timely because appellants clearly acted upon the District Court's representation. Further, inasmuch as the THO case had not been scheduled until December 16, 2009, the filing of the written demand on December 9, 2009 satisfied the timeliness requirement for that case as well.

## V. Summary and Harmless Error

■ At this juncture, we conclude that the actions involved both equitable and legal claims. An action for possession from a tenant holding over has been recognized as an action at law. The damages claim for breach of the covenant of quiet enjoyment and warrant of habitability, though related to the rent escrow claim, are cognizable at law and satisfied the jurisdictional threshold. Although this is a close case, we may conclude that the jury trial demands in each were timely. We also conclude that, while presenting a close question, appellants satisfied the amount in controversy threshold for the THO case under the Court of Appeals' analysis in *Purvis, supra,* 286 Md. at 403, 408 A.2d 388. Accordingly, the circuit court erred by striking the jury trial demands.

Notwithstanding the above conclusion, we hold that any error by the circuit court in striking the jury trial demands was harmless in light of the court's rulings on appellee's motions for directed verdicts or judgments. In the context of many civil cases, "[t]he harmless error test is one for which Maryland courts, like many other jurisdictions, have declined to establish 'precise standards.'" *Barksdale v. Wilkowsky,* 419 Md. 649, 662, 20 A.3d 765 (2011) (citations omitted). Nevertheless, a singular requirement is that the aggrieved party

the disposition of at least four months rent that had been paid into the court by appellants.

establish prejudice as a result of the error. *Id.* The record before us does not demonstrate prejudice in the denial of a jury trial in either case.

The circuit court entered judgments on appellee's directed verdict motions in both cases, ruling against appellants as a matter of law in each case. *See* Md. Rule 2–519. In the THO action, appellee's counsel argued that because appellants had altered the original lease that had been proffered for renewal, they effectively rejected that lease, thus electing to become tenants on a month-to-month basis. The court's ruling on this motion included the following:

All right. I did take a few moments to review all of the evidence that was presented in this matter, to review the lease and the letter dated May the 29th, which is Plaintiff's Exhibit No. 7. I've reviewed all of the testimony, the applicable statute, and the case law.

And in this case the defendants have taken the position . . . that the option that was exercised, and I think everybody agrees that the option was apparently exercised, but they take the additional position that the consideration was paid, that they had made a new, or payment of rent at a new rate and that there was no need for a new contract; that the option basically was the new lease.

Having reviewed, particularly Exhibit No. 7, and Plaintiff's [Exhibit] 4, as well as Plaintiff's [Exhibit] 1, I disagree. I don't think that there's any, or I don't find that there's any legal or contractual basis, really, to support the defendant's position that they would not have to sign a new lease.

\* \* \*

The language in the letter itself says, "Your current lease provides you with the option. We hope that you decide to continue with a new lease." I mean, I think it's clear that the intent was that there was going to be another lease.

\* \* \*

So, looking at everything that was presented to me, as I say, I find absolutely no legal contractual basis to support the defendant's position. I am going to grant the plaintiff's

request and give immediate possession. Or grant a judgment for immediate possession of the premises to the landlord.

In the rent escrow case, the court recited some of the evidence, but then determined that appellants' case was insufficient. The transcript includes the following:

[THE COURT]: So, but anyway, I don't even need to get to that point because I just simply find that there is absolutely nothing that's been alleged that would rise to the level that would be required by this statute, no serious or dangerous defect that has [been] alleged or proven.

All right. Thank you. Court is in recess. So actually I think my option under the statute is then to dismiss—

\* \* \*

[COUNSEL FOR APPELLEE]: There is—you just raised one issue that needs to be dealt with. He was ordered to pay into the Court. He did pay four months. I don't know if he paid a fifth month. But the Court needs to issue an order—

\* \* \*

Well, we, that was our directed verdict motion. Now that you've granted it, you've found in our favor I assume? THE COURT: Yes.[13]

Ruling on appellee's motions for judgment, the circuit court rendered legal determinations on the adequacy of appellants' claims in both cases. The judgments in each case did not depend on determinations of fact that would have been rendered by a jury or a trial court as a fact-finder.

■ In the THO case, with appellee claiming that appellants were tenants holding over without a renewed lease, the circuit court held there was no leasehold agreement because the "marked-up" lease that appellants returned to appellee

---

13. There was additional discussion about how and whether any of the funds appellants had been paid into the court escrow account would be disbursed. *See* R.P. § 8–211(n).

constituted a counter-offer. "The interpretation of a contract [including a lease], including the determination of whether a contract is ambiguous, is a question of law, which we review de novo." *Ocean Petroleum, Co. v. Yanek,* 416 Md. 74, 86, 5 A.3d 683 (2010) (citation and internal quotation marks omitted). Upon review of the lease as a whole, and the evidence of record, we agree with the court's ruling on this matter.

In the rent escrow case, the circuit court effectively dismissed the case, ruling that appellants did not present sufficient evidence to sustain their cause of action under the Rent Escrow Act or for damages for breach of the covenant of quiet enjoyment or the warranty of habitability. Appellants do not take issue with the court's ruling, and we uphold that decision.

In *United States v. Williams,* 441 F.2d 637, 644 (5th Cir. 1971), the United States Court of Appeals for the Fifth Circuit observed that it would not demand "jury consideration of an issue which is determinable by directed verdict." Moreover, "[t]he question whether evidence is sufficient for submission to a jury is procedural." *Id.* As was noted by the United States Court of Appeals for the Second Circuit, when a trial court would have been required to direct a verdict on certain issues, "[t]here is no constitutional right to have twelve men [or women] sit idle and functionless in a jury-box." *United States v. 243.22 Acres of Land,* 129 F.2d 678, 684 (2d Cir.1942). "Where the facts will allow but one conclusion or inference, a judge properly may remove the issue from the jury." *Parfait v. Central Towing, Inc.,* 667 F.2d 1189, 1190 (5th Cir.1982); *accord Indiana Lumbermens Mut. Ins. Co. v. Timberland Pallet & Lumber Co.,* 195 F.3d 368, 375 (8th Cir.1999) (stating that district court did not disregard jury verdict, but instead decided questions of law); *Jennings v. McCormick,* 154 F.3d 542, 546 (5th Cir.1998) (error harmless if evidence could not have withstood motion for directed verdict); *Burns v. Lawther,* 53 F.3d 1237, 1242 (11th Cir.1995) (recognizing that harmless error analysis may be applied only where issues could have been disposed of on summary judgment or judgment as matter of law); *In re Professional Air Traffic Controllers Organization (PATCO),* 724 F.2d 205, 206 n. 5 (D.C.Cir.1984)

(affirming pre-trial order striking jury trial because "no pivotal, genuinely debatable fact question exists in the case"); *Cox v. C.H. Masland & Sons, Inc.*, 607 F.2d 138, 145 (5th Cir.1979) (denial of jury trial harmless error because suit would not have survived motion for directed verdict).

■ In sum, the circuit court ruled, first, that appellants were tenants holding over because a new lease had not been executed. "The legal relationship between landlord and tenant is governed by the contract between the parties ... as well as any statutory authority." *McDaniel v. Baranowski*, 419 Md. 560, 574, 19 A.3d 927 (2011) (citing *Delauter v. Shafer*, 374 Md. 317, 822 A.2d 423 (2003), *Village Green Mut. Homes v. Randolph*, 361 Md. 179, 760 A.2d 716 (2000)). The court ruled that the parties had not reached an agreement that would support a finding of a continuation of the leasehold for an additional year.[14] A review of the lease that appellants returned to appellee indicates changes to the document that could only be construed as a counter-offer. With respect to the complaint under the Rent Escrow Act and for damages arising out of the alleged breach of the covenant of quiet enjoyment and the warranty of habitability, the court ruled that appellants did not produce sufficient evidence to support their claim as a matter of law. The court ruled that it was essentially "dismiss[ing]" the action.[15] This ruling, not challenged on appeal, addresses the damages claims that would arise from "conditions and defects in the leased premises." [16]

Upon *de novo* review of the circuit court's entries of judgment, we discern no error and shall affirm. This disposition

---

14. Although the court's ruling has not been challenged in appellants' opening brief, we have reviewed it to determine whether the decision to strike the jury trial demand is harmless error.

15. In their opening brief, appellants do not take issue with the court's ruling on the merits in the rent escrow case.

16. Our disposition of the jury trial issues forecloses any additional claim by appellants that their due process rights were abridged to the extent their complaints arise from the striking of their jury trial demands.

renders any error by the circuit court in striking the jury trial demands harmless.

**JUDGMENTS OF THE CIRCUIT COURT FOR MONT- GOMERY COUNTY AFFIRMED. APPELLANTS TO PAY COSTS.**